THE VILLAGE OF CARPENTERSVILLE, Appellant and Cross-Appellee, v. THE POLLUTION CONTROL BOARD *et al.*, Appellees and Cross-Appellees (Cargill, Inc., Appellee and Cross-Appellant).

Second District   No. 2—88—0049

Opinion filed November 23, 1988.

Bernard Z. Paul, of De Kalb, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Joseph M. Clapps, Michelle D. Jordan, and Gerald T. Karr, Assistant Attorneys General, of Chicago, of counsel), for respondent Environmental Protection Agency.

Dorothy M. Gunn, of Pollution Control Board, of Chicago, and Mary Drake, of Environmental Protection Agency, of Maywood (John M. Vandlik, special counsel, Pollution Control Board, of counsel), for respondent Pollution Control Board.

Vincent O. Oleszkiewicz and James R. MacAyeal, both of Mayer, Brown & Platt, of Chicago (Percy L. Angelo, of counsel), for respondent Cargill, Inc.

JUSTICE WOODWARD delivered the opinion of the court:

Petitioner, Village of Carpentersville (Village), brings this petition for review from a decision of the Illinois Pollution Control Board

(Board), which declared a portion of the Village's zoning ordinance preempted by a condition in a permit issued by the Illinois Environmental Protection Agency (Agency) to Cargill, Inc. (Cargill). Cargill brings a cross-appeal challenging the necessity of the requirement imposed by the Agency as a condition of the permit.

The Village raises several issues on appeal. However, we find we need only address one, to wit, whether the Village's zoning ordinance is preempted by the condition in the construction permit issue by the Agency.

Cargill's plant, located in the older section of the Village, manufacturers resins for the paint and coating industry. The plant is zoned M-2 industrial. As part of the manufacturing process, a waste known as "water of reaction" is generated. This waste is a hazardous waste which must be disposed of in accordance with Federal and State environmental regulations. The waste is disposed of in a liquid waste incinerator.

In late 1985, due to complaints of odors, Cargill undertook steps to identify and control any odors that might be emanating from the plant. Around March 1986, the Agency requested that Cargill temporarily shut down its liquid waste incinerator pending construction of certain proposed improvements or modifications. As a result, Cargill has transported the waste to an off-site disposal facility. In addition to being expensive ($60,000 to $70,000 per month), Cargill maintained that the transfers could be a possible source of odors.

In February 1987, Cargill requested a construction permit from the Agency to make certain modifications to the existing incinerator. The permit was issued but was subject to certain conditions imposed by the Agency. Cargill and the Agency reached agreement on all but one condition, which is as follows:

> "The height of the incinerator discharge stack shall be raised to 100 feet above the grade. The incinerator shakedown and emission testing may be performed with the existing short stack; however, incinerator operation will not be allowed until the stack has been raised to the specified 100 feet."

At the public hearing held on October 5, 1987, the Agency presented testimony that since the present stack was only 25 feet above the grade level, there was a possibility of exacerbating the existing odor problem due to the operation of the incinerator. The Agency therefore required that the stack be raised to 100 feet. The 100-foot level was arrived at by applying the general engineering rule of thumb that requires that the height of a stack be 2½ times above the height of the nearest obstruction in order to avoid any undue aerody-

namic influence on the discharge from that stack. There was also the possibility of hazardous discharge if the incinerator were to malfunction.

Cargill, on the other hand, maintained that the Agency did not identify its incinerator as a source of the odor problem. Moreover, the incinerator was equipped with a monitoring device and would automatically shut down in the event of a malfunction. Nevertheless, Cargill was willing to comply with the aforesaid condition in the event it was not prevented from doing so by the Village's zoning restriction which limited buildings to a height of 35 feet.

Following the hearing, Cargill and the Agency filed written briefs on the issues. While Cargill argued against the imposition of condition of raising the stack to 100 feet, it also maintained that the Village's zoning ordinance was preempted by the Agency's permit condition. The Agency agreed with the latter contention.

On December 17, 1987, the Board, with one member dissenting, issued an order adopting the parties' preemption argument and held that the issuance of the permit superseded the effect of the ordinance. As part of the order and pursuant to section 41 of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 1041), the Village, a non-home-rule entity, was added as a "party adversely effected by a final order or determination of the Board." This appeal and cross-appeal followed.

The dispositive issue here is whether the Village's zoning ordinance is preempted by the condition set forth in the permit issued by the Agency. We agree with the Village that there is no preemption in this case.

Section 39(c) of the Act states in pertinent part as follows:

"Except for those facilities owned or operated by sanitary districts organized under 'An Act to create sanitary districts and to remove obstructions in the Des Plaines and Illinois rivers', approved May 29, 1889, as now or hereafter amended, and except for new regional pollution control facilities governed by Section 39.2, and except for fossil fuel mining facilities, *the granting of a permit under this Act shall not relieve the applicant from meeting and securing all necessary zoning approvals from the unit of government having zoning jurisdiction over the proposed facility.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 111½, par. 1039(c).

In determining that the Village's zoning ordinance was preempted by the condition set forth in the permit, the Board relied on our supreme court's decision in *County of Kendall v. Avery Gravel Co.*

(1984), 101 Ill. 2d 428. In that case, the court, after analyzing several prior cases, determined that the Agency's regulation preempted a non-home-rule unit of government's zoning ordinance. One of the cases cited favorably by the supreme court was *County of McHenry v. Sternaman* (1978), 63 Ill. App. 3d 679, in which this court held that the Agency regulations superseded county zoning ordinances relating to the operation of a gravel pit.

■ We are of the opinion that the supreme court's decision in *County of Kendall* does not control our decision in the case at bar. In that case, the county argued that recent amendments to section 2 of the Surface-Mined Land Conservation and Reclamation Act (Ill. Rev. Stat. 1981, ch. 96½, par. 4502) and section 39 of the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1039) provided that permits to engage in strip-mining of other than fossil fuels did not relieve the permit holder from complying with local laws regulating the commencement, location or operation of surface mining facilities. In rejecting that argument, the court stated as follows:

> "The County of Kendall argues that this legislative enactment justifies the regulation of the Averys' limestone processing. We disagree. We can not give House Bill 134 retroactive application because of its substantive nature. We believe that the legislature can enact laws such as House Bill 134, but such legislation does not disturb Illinois law before the effective date of the legislation. We are required to decide the case at bar based on the law in effect at the time the lawsuit was filed, rather than subsequent legislative enactments." (*County of Kendall*, 101 Ill. 2d at 435.)

Further, we note that *Village of Union v. Southern California Chemical Co.* (1978), 59 Ill. App. 3d 373, predated the amendment to section 39(c) relied on here.

None of the exceptions recited in the statute are applicable to Cargill. Moreover, the language of the statute is plain and unambiguous and thus is not subject to construction by this court. (*People ex rel. Nelson v. Olympic Hotel Building Corp.* (1950), 405 Ill. 440, 444.) The plain language of the statute here is that the issuance of a permit by the Agency does not excuse a permit holder from complying with local zoning ordinances. The Village's ordinance is not preempted, and Cargill must comply with the 35-foot height limitation required under the Village's ordinance.

■ Cargill argues that because the Village has raised this argument for the first time on appeal, the argument is waived. (*First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787.) While this is an

accurate statement of the law, we will not apply it where the Village was joined as a party after the hearing and pursuant to the order disposing of the case.

■ Cargill also argues that in applying the 35-foot height limitation to its smokestack, the Village is exceeding its regulatory authority, since the Illinois Municipal Code permits only the height and bulk of *buildings* to be regulated. (See Ill. Rev. Stat. 1987, ch. 24, par. 11—13—1(1).) In addition, Cargill argues that by the enforcement of the height limitation, the Village is depriving Cargill of the use of its property, also in violation of section 11—13—1 of the Municipal Code. However, neither argument is supported by definitions, case citations or other relevant authority, and thus, both are in violation of Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7)) and are waived. (*Flynn v. Vancil* (1968), 41 Ill. 2d 236.) Moreover, these issues have not been litigated in these proceedings.

We conclude, therefore, that the condition set forth in the permit issued by the Agency to Cargill does not preempt the Village's zoning ordinance.

We now turn to the cross-appeal filed by Cargill.

Cargill contends that in the event this court determines that there is no preemption, then the permit condition, relating to the height of the incinerator smokestack, should be stricken as a matter of law.

■ The provisions of the Act make it clear that the Board is possessed of expertise and that it has broad discretionary powers. It is equally clear, however, that the Board's adjudicatory orders and determinations are subject to judicial review and, in order to be sustained, must not be contrary to the manifest weight of the evidence. (*Wells Manufacturing Co. v. Pollution Control Board* (1978), 73 Ill. 2d 226, 234.) The appellate court reversed a finding of the Board that Wells had violated the Act as against the manifest weight of the evidence and granted Wells an operating permit. The supreme court affirmed.

In this case, the Board found that the Agency's permit condition preempted the effect of the Village's ordinance restricting the stack height to 35 feet, and therefore, it did not need to address the question as to whether the 100-foot stack height is necessary for the operation of the incinerator to be in compliance with the Act and its regulations.

Normally, any question not reached on the trial level is remanded for consideration. However, where the issue to be resolved is one of pure law, the court, by virtue of its authority under Supreme Court Rule 366(a)(5), has the power to "enter any judgment *** that ought

to have been given or made." 107 Ill. R. 366(a)(5); *Shortridge v. Sherman* (1980), 84 Ill. App. 3d 981, 986.

We are of the opinion that this case must be remanded to the Board for it to make a finding as to whether the 100-foot stack requirement is necessary for the operation of the incinerator to be in compliance with the Act and the regulations. Since this is a factual determination, not one of pure law, remandment is required in this case.

We conclude, therefore, that the Village's zoning ordinance is not preempted by the Agency's permit condition. Further, the case is remanded for a determination by the Board as to the necessity for the increase in height to Cargill's incinerator smokestack.

The decision of the Board is reversed and the cause remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded with directions.

NASH and REINHARD, JJ., concur.