(No. 68074.—

THE VILLAGE OF CARPENTERSVILLE, Appellee, v.
THE POLLUTION CONTROL BOARD *et al.*, Appel-
lees (Cargill, Inc., Appellant).

*Opinion filed March 29, 1990.*

464

Percy L. Angelo and James R. MacAyeal, of Chicago (Mayer, Brown & Platt, of counsel), for appellant.

Bernard Z. Paul, of De Kalb, for appellee Village of Carpentersville.

Robert W. Mueller and Katherine D. Hodge, both of Springfield, for *amicus curiae* Illinois Environmental Regulatory Group, Inc.

JUSTICE CLARK delivered the opinion of the court:

At the core of this appeal is the question of whether a village zoning ordinance is preempted by a requirement set forth in a permit issued by the Environmental Protection Agency (Agency) under the provisions of the Environmental Protection Act (the Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 1001 *et seq.*). The Village of Carpentersville (the Village) appealed a determination of the Illinois Pollution Control Board (Board) that held a height restriction in the Village's zoning ordinance was preempted by the provisions of the Act. The appellate court reversed (176 Ill. App. 3d 668), finding no preemption of the zoning ordinance. We granted Cargill's petition for leave to appeal (107 Ill. 2d R. 315). For the reasons stated herein, we affirm.

Cargill manufactures resins for the paint and coating industry at its plant located in an M—2 industrial zone of the Village of Carpentersville. A by-product of Cargill's manufacturing process is a hazardous waste known as "water of reaction." Cargill has disposed of this hazardous waste on site by utilizing a liquid-waste incinerator; disposal has been in accordance with Federal and State environmental regulations.

Following numerous complaints from local residents about noxious odors and in cooperation with the Agency, Cargill voluntarily undertook an extensive program in 1985 to identify and control possible sources of odors allegedly emanating from its plant. During March 1986 the Agency made several suggestions to Cargill regarding

odor abatement. One of the Agency's suggestions which was followed by Cargill was to temporarily shut down the liquid-waste incinerator pending implementation of certain proposed improvements and modifications. The Agency issued Cargill a permit to make the modifications, but imposed several special conditions. Accord was reached on all conditions except special condition nine, which provided:

> "The height of the incinerator discharge stack shall be raised to 100 feet above grade. The incinerator shakedown and emission testing may be performed with the existing short stack; however, incinerator operation will not be allowed until the stack has been raised to the specified 100 feet."

Cargill attempted to obtain a variance from the Village for a 100-foot stack. The Village, however, refused to grant one. Cargill then filed an appeal with the Board contesting the Agency's condition nine or, in the alternative, proposing that the Village's height restrictions were preempted. The Agency asserted that its condition nine was necessary but agreed with Cargill that the Village's zoning ordinance was preempted. The Board issued its opinion and order in December 1987, finding that the Village of Carpentersville's zoning ordinance limiting the height of structures to 35 feet was preempted by the Act. The order additionally joined the Village of Carpentersville as a party to the proceeding. One member of the Board dissented. The dissent focused on two points: (1) that pursuant to section 39(c) of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(c)), "the grant of an Agency permit does not exempt an applicant from meeting and securing all necessary zoning approvals"; and (2) that the Board does not have authority to declare a local ordinance preempted. *Cargill, Inc. v. Environmental Protection Agency* (1987), 84 PCB Op. 649.

Pursuant to section 41 of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1041), the Village of Carpentersville appealed the Board's decision. The appellate court, relying on the "plain and unambiguous" language of the Act, held that "the issuance of a permit by the Agency does not excuse a permit holder from complying with local zoning ordinances. The Village's ordinance is not preempted ***." (176 Ill. App. 3d at 672.) Section 39(c) of the Act, on which the appellate court relied, states, in pertinent part, as follows:

"Except for those facilities owned or operated by sanitary districts organized under 'An Act to create sanitary districts and to remove obstructions in the Des Plaines and Illinois rivers', approved May 29, 1889, as now or hereafter amended, and except for new regional pollution control facilities governed by Section 39.2, and except for fossil fuel mining facilities, the granting of a permit under this Act shall not relieve the applicant from meeting and securing all necessary zoning approvals from the unit of government having zoning jurisdiction over the proposed facility." Ill. Rev. Stat. 1987, ch. 111½, par. 1039(c).

Before our court, Cargill raises seven issues for review: (1) whether the Act preempts a non-home-rule unit of government from regulating air pollution through use of a zoning ordinance; (2) whether amendment of section 39(c) of the Act was intended to overrule established court precedent; (3) whether, assuming *arguendo* that a non-home-rule unit of government may regulate air pollution under its zoning ordinance, such regulation must nonetheless complement or conform to and not conflict with the State's uniform statewide program of environmental regulation; (4) whether the amendment to section 39(c) of the Act is unconstitutional based on inconsistency with the Illinois Constitution; (5) whether a height restriction is an exercise of zoning powers which falls within the Act's language regarding zoning approvals;

(6) whether section 39(c), as interpreted by the appellate court, involves an unconstitutional denial of due process and equal protection and an improper taking of property without compensation; and (7) whether the appellate court's interpretation of the Act conflicts with the Federal Clean Air Act and the federally approved State implementation plan.

Cargill, citing this court's decisions in *County of Kendall v. Avery Gravel Co.* (1984), 101 Ill. 2d 428, *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, and *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360, first claims that the Village's zoning ordinance is preempted by the Act. Cargill is correct in pointing out that this court had long held that, due to the Act's express purpose of "establish[ing] a unified, state-wide program" to protect the environment (Ill. Rev. Stat. 1987, ch. 111½, par. 1002(b)), the Act was intended to preempt non-home-rule regulations. (See *Avery Gravel*, 101 Ill. 2d at 432-33; *John Sexton Contractors Co.*, 75 Ill. 2d at 505-07; *Carlson*, 62 Ill. 2d at 408-10; *O'Connor*, 52 Ill. 2d at 366-67.) The problem with Cargill's argument, as we will explain, is that section 39(c) of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(c)) has been amended in a manner that makes clear that the Act no longer preempts local zoning ordinances. Accordingly, this court's decisions in *Avery Gravel*, 101 Ill. 2d at 432-33, *John Sexton Contractors Co.*, 75 Ill. 2d at 505-07, *Carlson*, 62 Ill. 2d at 408-10, and *O'Connor*, 52 Ill. 2d at 366-67, which were based upon this court's interpretation of the Act as it existed prior to the General Assembly's amendment of section 39(c), offer little support for Cargill's position.

Prior to the amendments to section 39(c), the only requirements in the Act pertaining to local governmental involvement in permitting decisions were that local gov-

ernments were required to be notified when a request for a refuse-disposal permit had been requested, and a public hearing had to be held in the county where the proposed refuse-disposal facility would be located. (See Ill. Rev. Stat. 1981, ch. 111½, par. 1039(c).) On November 12, 1981, however, the General Assembly amended section 39(c) of the Act to provide:

> "No permit for the development or construction of a new facility other than a new regional pollution control facility may be granted by the Agency *unless the applicant submits proof to the Agency that the applicant has secured all necessary zoning approvals from the unit of local government having zoning jurisdiction over the proposed facility.*" (Emphasis added.) (1981 Ill. Laws 3574.)

The plain language of the amendment made clear that, at least with respect to new pollution control facilities, the General Assembly no longer intended that the Act preempt local zoning ordinances.

Section 39(c) was subsequently amended to provide:

> "Except for those facilities owned or operated by sanitary districts ***, and except for new regional pollution control facilities ***, and except for fossil fuel mining facilities, the granting of a permit under this Act *shall not relieve the applicant from meeting and securing all necessary zoning approvals from the unit of government having zoning jurisdiction over the proposed facility.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(c).)

This subsequent amendment thus applies not only to applicants seeking permits for construction of new facilities (as with the initial amendment), but also to those seeking permits to modify existing facilities (see Ill. Rev. Stat. 1987, ch. 111½, par. 1039(a)). The plain language of this subsequent amendment, like the initial amendment, makes clear that permits issued under the Act no longer preempt local zoning ordinances. Because the language of section 39(c) is unambiguous, we need not consider the legislative history cited by Cargill in reaching our de-

cision. (See *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151.) Nevertheless, we note that nothing in that legislative history belies our conclusion.

Cargill, however, argues that the subsequent amendment requires that pollution control facilities comply with the zoning requirements of only home rule units of government, not those of non-home-rule units. Cargill bases its argument on the General Assembly's use of the phrase "all *necessary* zoning approvals" (emphasis added) (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(c)) in the amendment. Cargill notes that at the time that the amendment was enacted, this court had held that only the local zoning ordinances of non-home-rule units of government were preempted; home rule zoning ordinances were not preempted. (See *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 514-15.) Thus, Cargill argues, at the time the amendment was enacted, the only zoning approvals that could be said to be "necessary" were zoning approvals of home rule units of government. Accordingly, Cargill reads the amendment as merely requiring zoning approval from home rule units of government. We do not agree.

Cargill's argument is essentially that the General Assembly intended to codify this court's decision in *John Sexton Contractors Co.*, 75 Ill. 2d 494. However, Cargill points to nothing in the language of either amendment to section 39(c), or in the legislative debates concerning those amendments, which suggests that this is true. Instead, section 39(c) provides that an applicant must meet and secure "all necessary zoning approvals from *the unit of government having zoning jurisdiction over the proposed facility.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(c).) We read the word "necessary" as meaning zoning approvals which the local government deems to be necessary under the local government's zon-

ing code. We note that there are no words qualifying the phrase "unit of government." In using the unqualified phrase "the unit of government having zoning jurisdiction over the proposed facility," the General Assembly was certainly aware that both home rule and non-home-rule units of government have zoning jurisdiction in Illinois. Had the General Assembly intended to restrict the amendment's application to home rule units of government, we believe that it would have done so expressly.

We also find Cargill's citation to *Brubaker v. Board of County Commissioners* (Colo. 1982), 652 P.2d 1050, unpersuasive. In *Brubaker*, the United States Forest Service had granted a mining company the right to conduct limited test drilling for minerals on certain Federal land so long as the company " 'compl[ied] with *** all Federal, State, County, and Municipal laws, ordinances, or regulations which are applicable to the area or operations covered by this plan.' " (*Brubaker*, 652 P.2d at 1053.) Officials of El Paso County then denied the mining company's application for a special use permit under the El Paso County zoning code. (*Brubaker*, 652 P.2d at 1053.) The court in *Brubaker* held that, despite the language from the United States Forest Service regarding "compl[iance] with *** Municipal laws," El Paso County's regulations were preempted by Federal law. *Brubaker*, 652 P.2d at 1060.

*Brubaker* is distinguishable from the present case because *Brubaker* involved a governmental *agency* attempt at abrogating a well-established preemption doctrine. (See *Brubaker*, 652 P.2d at 1057.) Such abrogation is clearly beyond the power of a government agency. (*Brubaker*, 652 P.2d at 1057; see also *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 410.) In the present case, however, it is the legislature that has statutorily abrogated the preemption doctrine with regard to the Environmental Protection Act.

Cargill next claims that our reading of section 39(c) renders the statute unconstitutional under section 1 of article XI of the Illinois Constitution (Ill. Const. 1970, art. XI, §1) in that the statute allows local governments the right to impose requirements which conflict with statewide standards for pollution control. Section 1 of article XI of our constitution provides:

> "The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation of this public policy." (Ill. Const. 1970, art. XI, §1.)

This language, and the report of the General Government Committee of the constitutional convention on this section of the constitution, makes clear that the intent behind this section is that the General Assembly should play a leadership role in implementing a statewide plan for pollution control. (See 6 Record of Proceedings, Sixth Illinois Constitutional Convention 699-700 (hereafter Proceedings).) However, "it was not the intention of the committee that the local governmental units be prohibited from acting in this field." (*City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, 488.) Instead, the committee intended "that under the leadership of the General Assembly the intergovernmental efforts complement one another." *City of Chicago*, 59 Ill. 2d at 488.

It is true, as Cargill notes, that the General Government Committee's report also indicates that the committee intended "that the inter and intra governmental efforts complement one another, [and] that there be a coordinated plan of action with uniform standards." (6 Proceedings 700.) Cargill, in its cursory argument in support of its claim, appears to argue that these statements establish that the General Assembly has a constitutional duty to implement statewide, uniform environ-

mental standards which, once implemented, must override all other governmental regulations.

The problem with Cargill's apparent argument is that it takes language from the General Government Committee's report on the environmental article of the constitution and raises it to the level of the language of the constitution itself. While statements and reports made by the delegates to the constitutional convention are certainly useful and important aids in *interpreting* ambiguous language of the constitution (see *Board of Education v. Bakalis* (1973), 54 Ill. 2d 448, 461-62), they are, of course, not a part of the constitution. It would be improper for this court to transform statements made during the constitutional convention into constitutional requirements where such statements are not reflected in the language of the constitution.

We find that nothing in the language of the constitution suggests that the General Assembly has a duty to adopt uniform, statewide standards for environmental protection. Instead, our reading of the language of section 1 of article XI convinces us that the General Assembly's only duty under the constitution with regard to environmental matters is to "provide by law for the implementation and enforcement of" the State's public policy "to provide and maintain a healthful environment." (Ill. Const. 1970, art. XI, §1.) If the General Assembly chooses to implement uniform, statewide standards in furtherance of this duty, it can (but is not constitutionally required to) do so. Similarly, if the General Assembly determines that local zoning ordinances should play a role in Illinois' coordinated pollution control plan, even though such ordinances may conflict in certain instances with uniform, statewide standards, then the General Assembly can constitutionally do so.

Cargill next makes the related claim that the Village is prohibited from imposing requirements that directly

conflict with the State's uniform program of environmental regulation not only by the constitution, but also by this court's decision in *John Sexton Contractors Co.*, 75 Ill. 2d 494. In that case, this court held that home rule governmental units cannot impose requirements that directly conflict with the uniform pollution control standards est · lished by the legislature. (*John Sexton Contractors Co.*, 75 Ill. 2d at 514-15.) According to Cargill, if home rule units cannot impose regulations which conflict with statewide standards, then neither can non-home-rule units.

The problem with Cargill's argument is that the decision in *John Sexton Contractors Co.* was based upon this court's interpretation of the Act as it existed prior to the General Assembly's enactment of amendments to section 39(c). As noted earlier, this court had interpreted the Act at that time as preempting local ordinances. (See *John Sexton Contractors Co.*, 75 Ill. 2d at 506-07.) However, under section 6 of article VII of our constitution, home rule units of government "may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." (Ill. Const. 1970, art. VII, §6(i).) Because the General Assembly had failed to "specifically limit the concurrent powers or specifically declare the State's exercise to be exclusive," this court held that, despite the General Assembly's intent that the Act preempt local regulations, home rule units under the constitution must, at a minimum, be allowed to exercise concurrent powers in environmental matters. *John Sexton Contractors Co.*, 75 Ill. 2d at 514-15.

In the present case, however, the General Assembly, by amending section 39(c), has made clear that it no longer intends for the Act to preempt local zoning ordi-

nances. Thus, the General Assembly has determined that, under the Act, the zoning powers of local governmental units, both home rule and non-home-rule, should be broader than the minimum powers to share concurrent jurisdiction with the State that are provided for in section 6 of article VII (Ill. Const. 1970, art. VII, §6(i)). Nothing in the constitution or our prior case law prohibits the General Assembly from making and implementing such a determination.

Cargill next raises a number of arguments pertaining to the propriety of the Village's height-restriction zoning ordinance. First, Cargill (without citing any authority) argues that the Village's ordinance does not constitute zoning because "stack height in an industrial area simply has nothing to do with zoning, which as properly understood is a means of distributing and regulating the density of certain legitimate property uses within a community to promote public safety and welfare." Cargill also argues that the Village exceeded its power under the zoning provisions of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 11—13—1 *et seq.*). We decline to address these contentions here, however, because the issue before this court is whether the Pollution Control Board acted properly in concluding that the Village's zoning ordinance is preempted by the Act, not whether the Village has acted properly under its zoning power. Accordingly, we have no record before us regarding the propriety of the Village's use of its zoning power.

Cargill next claims, in a cursory manner, that the amendment to section 39(c) is unconstitutional because it will result in a denial of due process and equal protection, and constitutes both a taking of property and special legislation. However, as Cargill recognizes in its reply brief, it is not the Act which will allegedly cause the due process violation and the taking. Rather, the alleged constitutional violations will occur as a result of the Vil-

lage's refusal to grant Cargill a variance from the zoning code's height restriction. We also find little merit in Cargill's equal protection claim (a claim which challenges the validity of the Act itself), as Cargill has failed to cite any authority in its appellant's brief that supports its position. (See 113 Ill. 2d R. 341(e)(7); *Canteen Corp. v. Department of Revenue* (1988), 123 Ill. 2d 95, 111-12.) Finally, Cargill's argument that the Act constitutes improper special legislation is without merit because Cargill does not even claim, much less demonstrate, that the legislation is unreasonable or arbitrary. See *In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, 380.

Cargill's final claim is that our reading of section 39(c) could cause Illinois' environmental protection program to be inconsistent with Federal environmental standards, thus resulting in a loss of Federal funding to Illinois. We note that it is extremely unlikely that the scenario envisioned by Cargill will occur. However, even if it was likely that such a scenario could occur, our analysis would not change. The plain language of section 39(c) makes clear that both home rule and non-home-rule zoning ordinances are not preempted by the Act. Policy questions concerning the effects caused by such plain language (including the possibility that there will be a decrease in Federal funding to the State) are for the General Assembly to address, not this court.

We therefore conclude that, in the circumstances set forth by section 39(c) (Ill. Rev. Stat. 1987, ch. 111½, par. 1039(c)), local zoning ordinances are not preempted by the Illinois Environmental Protection Act. Accordingly, the judgment of the appellate court is affirmed.

*Affirmed.*