(No. 74405.—

DOUGLAS J. NEVITT, Appellant, v. OSSIE LANGFELDER, Mayor of the City of Springfield, *et al.*, Appellees.

*Opinion filed September 23, 1993.—Rehearing denied November 29, 1993.*

118

Thomas W. Duda, of Buffalo Grove, for appellant.

James K. Zerkle, Corporation Counsel, and Robert M. Rogers, Assistant Corporation Counsel, of Springfield, for appellees.

Elena Marcheschi, of Cornfield & Feldman, of Chicago, for *amicus curiae* Associated Fire Fighters of Illinois.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon and Mardell Nereim, of counsel), for *amicus curiae* City of Chicago.

Jack O'Malley, State's Attorney, of Chicago (Karen A. Covy, Jeanette Sublett and Kathleen J. McKee, Assistant State's Attorneys, of counsel), for *amicus curiae* County of Cook.

Beth Anne Janicki, of Springfield, for *amicus curiae* Illinois Municipal League.

Richard N. Williams, of Hoffman Estates, for *amicus curiae* Northwest Municipal Conference, Inc.

Richard D. Frazier, of Metnick, Barewin, Wise & Cherry, of Springfield, for *amicus curiae* Policemen's Benevolent & Protective Association of Illinois.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for *amicus curiae* American Federation of State, County & Municipal Employees.

CHIEF JUSTICE MILLER delivered the opinion of the court:

After a hearing, the circuit court of Sangamon County declared unconstitutional, as a violation of equal protection, an amendment to section 1 of the Public Employee Disability Act (5 ILCS 345/1 (West 1992)). The amendment had made the provisions of the statute applicable to home rule units of government containing fewer than 1 million persons while excluding from coverage home rule units having a greater population. For the reasons that follow, we reverse the judgment of the

court below and remand the cause for further proceedings.

The plaintiff, Douglas J. Nevitt, was employed as a fire fighter by the City of Springfield, a home rule unit of government. According to the complaint, the plaintiff was injured on March 30, 1991, while fighting a fire. At the time of the plaintiff's injury, the Public Employee Disability Act required home rule units of government with populations smaller than 1 million to continue paying, for a period of one year, wages and benefits to fire fighters who, like the plaintiff, sustain injury in the line of duty. The city refused the plaintiff's request for continued payment of those items. The plaintiff then brought the present action on March 27, 1992, seeking a declaratory judgment of his rights under the Act and a writ of *mandamus* to compel the city to comply with the obligations imposed by the Act. Named as defendants in the action were the City of Springfield, its mayor, and several other municipal officers and employees.

At the time of its enactment, in 1973, the Public Employee Disability Act did not apply to any home rule unit of government. In 1988, the Act was amended to extend its coverage to home rule units having populations of less than 1 million; home rule units larger than that remained outside its scope. It is the validity of the 1988 amendment that is at issue here. Section 1 of the Public Employee Disability Act now provides, in pertinent part:

"Whenever any law enforcement officer, correctional officer, fireman, or any other employee of the Department of Corrections or the Department of Mental Health and Developmental Disabilities working within a penal institution or State facility operated by the Department of Mental Health and Developmental Disabilities who is employed on a full time basis by the State of Illinois, any unit of local government (including any home rule unit), any State supported college or university, or any other public entity granted the power to employ persons for

such purposes by law suffers any injury in the line of duty which causes him to be unable to perform his duties, he shall continue to be paid by the employing public entity on the same basis as he was paid before the injury, with no deduction from his sick leave credits, compensatory time for overtime accumulations or vacation, or service credits in a public employee pension fund during the time he is unable to perform his duties due to the result of the injury, but not longer than one year in relation to the same injury, \*\*\*.

\* \* \*

Pursuant to paragraphs (h) and (i) of Section 6 of Article VII of the Illinois Constitution, this Act specifically denies and limits the exercise by home rule units of any power which is inconsistent herewith, and all existing laws and ordinances which are inconsistent herewith are hereby superseded. This Act does not preempt the concurrent exercise by home rule units of powers consistent herewith.

This Act does not apply to any home rule unit with population of over 1,000,000." (5 ILCS 345/1 (West 1992).)

As can be seen, the Act applies not only to certain home rule units, but to all other units of local government, and to various divisions of State government as well.

In his complaint, the plaintiff alleged that he was entitled to benefits under the Act as a result of his 1991 injury. The plaintiff sought a declaration of his rights under the Act and the issuance of a writ of *mandamus* compelling the municipal authorities to comply with the provisions of the Act. The defendants moved to dismiss the plaintiff's action, arguing that the classification of home rule units found in the Act violated the equal protection guarantees of the Federal and State Constitutions and was invalid special legislation prohibited by the State constitution. The defendants also argued that the legislature, if it wished to preempt home rule authority, could not choose to preempt the authority of fewer than

all home rule units of government. In addition, the defendants contended that the preemption clause of the Act was invalid because it failed to cite the correct preemption provision of the constitution, as required by statute. Finally, the defendants contended that the present action was premature because the plaintiff had not yet exhausted his administrative remedies before the Industrial Commission. Following a hearing, the trial judge granted the defendants' dismissal motion, concluding that the classification of home rule units in the Act was a denial of equal protection. The trial judge believed that the distinction recognized in the statute was arbitrary and failed to reflect any genuine difference between injured fire fighters employed by a home rule unit not covered by the Act and injured fire fighters employed by a home rule unit to which the Act applied. The judge did not address the defendants' other challenges to the provision. Because the statute was found unconstitutional, the plaintiff's appeal from that ruling lies directly to this court. (134 Ill. 2d R. 302(a).) We granted leave to a number of *amici curiae* to submit briefs in support of the parties' respective positions. See 134 Ill. 2d R. 345.

## I

We consider first the defendants' argument that the Act, as amended, impermissibly classifies home rule units on the basis of population. The defendants contend that the classification scheme used in the 1988 amendment to the Act violates the equal protection guarantee and the special legislation prohibition of the Illinois Constitution (Ill. Const. 1970, art. I, §2; art. IV, §13). In the proceedings below, the trial judge invalidated the statute solely on equal protection grounds. The defendants may, however, sustain the trial court's favorable ruling on other grounds not specifically addressed by the judge, and therefore we will consider the defendants' special

legislation challenge as well. (See *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387.) We note also that the defendants do not renew here their contention that the Act violates the equal protection clause of the United States Constitution. As will be evident, however, the Federal and State equal protection guarantees are determined by the same standards, and our result in this case would be no different under Federal law.

Legislation is presumed to be valid, and the party challenging the constitutionality of a statute bears the burden of establishing its invalidity. (*DeLuna v. St. Elizabeth's Hospital* (1992), 147 Ill. 2d 57, 67; *Bernier v. Burris* (1986), 113 Ill. 2d 219, 227; *People v. La Pointe* (1981), 88 Ill. 2d 482, 499.) The defendants challenge the Act as violative of the equal protection and special legislation provisions of the State constitution; the standards by which those arguments are to be assessed are familiar and well settled.

Article I, section 2, of the Illinois Constitution provides, "No person shall *** be denied the equal protection of the laws." (Ill. Const. 1970, art. I, §2.) In resolving challenges brought under that provision of the Illinois Constitution, we apply the same standards that govern equal protection claims made under the Federal Constitution. (*People v. Reed* (1992), 148 Ill. 2d 1, 7; *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477; *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 76-77.) In general, the guarantee of equal protection "does not deny to States the power to treat different classes of persons in different ways"; it does, however, "deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute." *Reed v. Reed* (1971), 404 U.S. 71, 75-76, 30 L. Ed. 2d 225, 229, 92 S. Ct. 251, 254.

The special legislation proscription of the Illinois Constitution provides, "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." (Ill. Const. 1970, art. IV, §13.) Like the equal protection guarantee, the special legislation prohibition is designed to prevent arbitrary legislative classifications. (*In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, 379.) A statute will not be held invalid on special legislation grounds, however, simply because it operates in only limited portions of the State. (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 111-12; *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 577; *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 399.) To hold otherwise would mean that no population-based classification could survive constitutional challenge.

There is no dispute that, because the present legislation neither affects a fundamental right nor implicates a suspect or quasi-suspect class, the appropriate level of scrutiny under the equal protection guarantee of the Illinois Constitution is the rational basis test. (*People v. Reed* (1992), 148 Ill. 2d 1, 7-8; *Bernier v. Burris* (1986), 113 Ill. 2d 219, 228; *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 119-22.) The same test applies to the defendants' special legislation argument as well. Though distinct provisions, the equal protection guarantee and the special legislation proscription of the Illinois Constitution are "generally judged by the same standard." (*Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 368; see also *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 370-71; *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 313-16.) Thus, whether the present Act "is challenged as special legislation or as violative of equal protection, the controlling question is the same: Is the statu-

tory classification rationally related to a legitimate State interest?" *Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 236.

The Act, as amended, distinguishes among home rule units of government on the basis of their population, excluding from coverage units with populations greater than 1 million. The parties agree that only two Illinois home rule units—Cook County and the City of Chicago—currently exceed that statutory threshold. The defendants contend here, as they did in the court below, that the distinction drawn in the Act among home rule units is arbitrary and unreasonable and is not rationally related to the purposes of the legislation. In support of the amended Act, the plaintiff and various *amici* identify a number of reasons why the legislature could rationally choose to exclude from coverage home rule units larger than 1 million persons while making the Act applicable to all other home rule units in the State. As we explain below, we find these reasons persuasive, and we conclude that the Act does not violate the equal protection guarantee or the special legislation proscription of the Illinois Constitution.

The apparent purpose of the Act is to guarantee a minimum level of disability benefits to certain public employees involved in law enforcement, fire protection, and related fields. We note that benefits similar to or identical with those provided by the Act were already being enjoyed by employees of Chicago and of Cook County at the time the Act was amended. *Amicus* City of Chicago informs us that Chicago police officers and fire fighters have secured, through the collective bargaining process, benefits equivalent to those provided by the Public Disability Employee Act. *Amicus* Cook County informs us that sheriff's police, deputy sheriffs, and correctional officers employed by the county similarly enjoy duty disability benefits pursuant to their collective bargaining

agreements with the county; according to *amicus* Associated Fire Fighters of Illinois, the amount of disability benefits for the correctional officers and deputy sheriffs is 75% of salary for a period of one year. In contrast, a Springfield ordinance grants to city workers, including police officers and fire fighters, disability benefits equivalent to only 90 days' salary for injuries sustained in the line of duty.

As mentioned above, both the city and the county engage in collective bargaining with their public safety employees. The legislature might have considered that the relative bargaining strength of the employees in those two localities made State intervention unnecessary or inadvisable. According to *amicus curiae* City of Chicago, more than 12,000 police officers and about 4,800 fire fighters are employed by the city. Cook County, according to its *amicus* brief, employs about 5,000 deputy sheriffs, sheriff's police, and correctional officers. The legislature could have reasonably concluded that employees in those particular home rule units possessed sufficient bargaining strength and expertise to enable them to gain disability benefits equivalent to those provided for in the Act, if the employees did not already have them, or, if the employees wished, to forgo identical disability benefits in favor of other measures regarding wages, benefits, or working conditions. Thus, given the circumstances of the bargaining relationships in Cook County and Chicago, the legislature could have rationally decided not to make the Act applicable to public safety employees of those two home rule units, and to leave to the bargaining process instead the further development of employee disability benefits in the two excluded jurisdictions.

Related considerations, too, support the legislature's decision not to bring Cook County and the City of Chicago within the scope of the Act. We note that the popu-

lation-based scheme used in the present Act reflects, and is consistent with, the classifying principles used in a number of related statutes. In legislation affecting wages and benefits, the General Assembly has frequently distinguished among employees on the basis of their employer's population. Thus, the legislature has enacted separate pension legislation for police officers employed by cities larger than 500,000 (40 ILCS 5/5—101 through 5—236 (West 1992)), and for fire fighters employed by cities larger than 500,000 (40 ILCS 5/6—101 through 6—226 (West 1992)). In addition, the legislature has enacted separate pension legislation for employees of counties of more than 500,000 persons (40 ILCS 5/9—101 through 9—239 (West 1992)).

The Workers' Compensation Act excludes from its scope claims by Chicago police officers and Chicago fire fighters, except for certain claims for disfigurement by fire fighters. (820 ILCS 305/1(b)(1), 8(c) (West 1992).) The Illinois Public Labor Relations Act distinguishes between employees of Cook County and the City of Chicago, on the one hand, and employees of other units of government in the State, on the other hand. (5 ILCS 315/1 through 27 (West 1992).) Thus, the Illinois Public Labor Relations Act establishes two separate administrative boards for the purpose of handling collective bargaining matters: a Local Board, having jurisdiction over matters involving "units of local government with a population in excess of 1 millions persons," and a State Board, having jurisdiction over matters involving other public employers covered by the legislation. 5 ILCS 315/5(a), (b) (West 1992).

These and other employment-related statutes that distinguish among units of local government have been upheld against similar challenges in the past. (See, *e.g.*, *City of Danville v. Industrial Comm'n* (1967), 38 Ill. 2d 479; *Gaca v. City of Chicago* (1952), 411 Ill. 146; *Littell*

*v. City of Peoria* (1940), 374 Ill. 344; *People ex rel. Moshier v. City of Springfield* (1939), 370 Ill. 541; *Hughes v. Traeger* (1914), 264 Ill. 612; *Lee v. Retirement Board* (1974), 22 Ill. App. 3d 600.) Thus, in *Moshier* the court upheld a statute establishing, for municipal fire fighters, a minimum wage of $150 a month in municipalities with populations between 10,000 and 25,000, and a minimum wage of $175 a month in municipalities with populations between 25,000 and 150,000. The statute did not apply to municipalities smaller than 10,000 or larger than 150,000. The City of Springfield, which then had a population of nearly 72,000, challenged the statutory classifications as violative of the special legislation provision of the 1870 Constitution (Ill. Const. 1870, art. IV, §22). In rejecting that contention, the court stated:

> "The difference in the cost of living, and in the hazards of the occupation, in municipalities within the two classifications in the act, and in those not embraced within its terms, furnishes a reasonable basis, under the general welfare and the police power, for such a classification. It bears a direct relation to the object and purpose of the legislation. Therefore, it is not in violation of the constitutional provision prohibiting local or class legislation." *Moshier*, 370 Ill. at 548.

The public safety employees of Chicago and Cook County serve in the two most heavily populated units of local government in the State. The legislature could well have concluded that those employees face special dangers not encountered by similar employees in other parts of Illinois. (See *Gaca v. City of Chicago* (1952), 411 Ill. 146, 154 ("We do not think it was unreasonable for the General Assembly to conclude that a policeman's job in the city of Chicago is fraught with hazards uncommon to any other city in Illinois").) The unique demands placed on employees in those two jurisdictions serve to distinguish public safety employees in Cook County and the

City of Chicago from similar workers employed elsewhere in the State. Accordingly, the legislature could have resolved to leave to the bargaining process the determination of which employment benefits would best serve public safety employees in Cook County and Chicago.

"Only if it can be said that the classification is clearly unreasonable and palpably arbitrary will the courts act to hold the classifying enactment invalid." (*Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 399.) There is no requirement that classifications like the one at issue here be drawn with mathematical precision (see *People ex rel. Vermilion County Conservation District v. Lenover* (1969), 43 Ill. 2d 209, 217), for "[e]ven if the difference be one of degree, only, it may be sufficiently great to require a difference in methods of municipal action" (*Mathews v. City of Chicago* (1930), 342 Ill. 120, 133). In view of the manifest differences between public safety employees of Cook County and Chicago and public safety employees of other jurisdictions, we conclude that the Act satisfies the requirements of the equal protection guarantee and the special legislation prohibition of the Illinois Constitution. Legislation is presumed to be valid, and the defendants have failed to discharge their burden here of establishing the alleged unconstitutionality of the challenged provision.

## II

In an alternative challenge to the present Act, the defendants contend that the legislature, in determining to preempt home rule authority, must treat all home rule units alike and may not selectively preempt the authority of fewer than all such units. The defendants believe that selective preemption violates the plain language of the preemption provisions of the Illinois Con-

stitution and runs contrary to the intent of the constitutional framers.

The relevant provisions governing home rule units are found in article VII, the local government article of the Illinois Constitution. Section 6 of article VII details the powers of home rule units and the manners in which the General Assembly may preempt that authority. With regard to home rule powers, section 6(a) states:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." (Ill. Const. 1970, art. VII, §6(a).)

The constitution automatically grants home rule status to any municipality with a population greater than 25,000 and to any county with a chief executive officer elected by the voters; other municipalities may become home rule units by referendum. (Ill. Const. 1970, art. VII, §6(a).) In addition, a home rule unit may abandon that status by referendum. Ill. Const. 1970, art. VII, §6(b).

The powers of home rule units are not without bounds; under the constitution, the legislature retains the authority to restrict the exercise of virtually all home rule powers. (*County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 508.) Article VII, section 6, contains a number of measures that provide the legislature with the tools necessary for the preemption of home rule activity. Section 6 provides, in pertinent part:

> "(g) The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other

power or function of a home rule unit not exercised or performed by the State other than a power or function specified in subsection (*l*) of this section.

(h) The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power or a power or function specified in subsection (*l*) of this Section.

(i) Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive.

(j) The General Assembly may limit by law the amount of debt which home rule counties may incur and may limit by law approved by three-fifths of the members elected to each house the amount of debt, other than debt payable from ad valorem property tax receipts, which home rule municipalities may incur.

(k) The General Assembly may limit by law the amount and require referendum approval of debt to be incurred by home rule municipalities, payable from ad valorem property tax receipts, only in excess of the following percentages of the assessed value of its taxable property: (1) if the population is 500,000 or more, an aggregate of three percent; (2) if its population is more than 25,000 and less than 500,000, an aggregate of one percent; and (3) if its population is 25,000 or less, an aggregate of one-half percent." (Ill. Const. 1970, art. VII, §§6(g), (h), (i), (j), (k).)

Subsection (*l*), referred to in the provisions quoted above, concerns local improvements by special assessment and local taxes for special services and is not relevant in this case.

It will be noted that section 6(k) classifies home rule units by population for certain tax purposes. We do not agree with the defendants, however, that the inclusion of this provision in section 6 demonstrates that the

framers intended to require that home rule units be treated alike for all other preemptive purposes. Apart from section 6(k), however, section 6 contains no other provision that requires the legislature to treat all home rule units alike in matters of preemption. As we have seen, the legislature retains broad authority to limit the exercise of home rule powers, and we do not discern in the preemption provisions of section 6 any general requirement that the legislature treat all home rule units alike for purposes of preemption.

Moreover, we note that the constitution permits eligible units to acquire and abandon home rule status by local referendum; adopting the defendants' view would therefore mean that the powers of legislative classification ultimately depend on whether a particular unit of government has chosen or rejected home rule. Of course, the equal protection guarantee and the special legislation prohibition, discussed earlier in this opinion, serve as limitations on the authority of the General Assembly; legislative efforts to classify units of local government, including home rule units, must satisfy the requirements of those, and other, provisions. But apart from section 6(k), applicable to only a narrow class of cases, we do not discern in the home rule measures of the constitution any additional restriction on legislative action, or any limitation peculiar to preemption, that would further limit the authority of the legislature to distinguish among units of local government, including home rule units.

To be sure, the legislature might itself choose to limit the areas or manners in which it preempts home rule authority. The requirements expressed in section 7 of the Statute on Statutes, discussed later in this opinion, are one example of how the legislature might decide to impose limits on its own actions. (5 ILCS 70/7 (West 1992).) The defendants have not identified any statu-

tory provision, however, that precludes the legislature from engaging in selective preemption of home rule authority, and we are not aware of any.

Having determined that nothing in the plain language of article VII, section 6, of the Illinois Constitution supports the defendants' interpretation of those provisions, we should have no occasion to consult the convention debates of those provisions. The same rules of construction applicable to statutes apply as well to the constitution (*People ex rel. Chicago Bar Association v. State Board of Elections* (1990), 136 Ill. 2d 513, 526-27; *Rock v. Thompson* (1981), 85 Ill. 2d 410, 427-28; *Peabody v. Russel* (1922), 301 Ill. 439, 443), and a basic rule of statutory construction forbids a court to canvass legislative history for evidence of legislative intent if the meaning of a provision can be determined from its text (*Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 366). That principle applies equally to constitutional interpretation. (*Village of Carpentersville v. Pollution Control Board* (1990), 135 Ill. 2d 463, 473.) Accordingly, our inquiry should be at an end. The defendants contend, however, that an examination of the convention debates will clarify the meaning of these otherwise silent provisions (see *People ex rel. Chicago Bar Association v. State Board of Elections* (1990), 136 Ill. 2d 513, 526), and the defendants devote a substantial portion of their brief to that task. Although we do not believe that consideration of the convention debates is necessary in this case, we have reviewed them nonetheless. See *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 152.

The defendants and *amici curiae* Illinois Municipal League and Northwest Municipal Conference cite a number of statements made during the 1970 Constitutional Convention in support of their contention that

the framers of the constitution intended to prohibit the legislature from selectively preempting the authority of home rule units. In the debates, the delegates considered various proposals concerning home rule powers and preemption. According to the defendants, the convention debates demonstrate that the framers intended to require that all home rule units be treated alike for purposes of preemption. We have examined the debates, including the portions cited by the parties, and do not agree with the defendants' interpretation of those remarks.

As *amicus* City of Chicago observes, that the framers carefully considered the population threshold at which the constitution would automatically confer home rule status does not mean that the framers intended to prohibit the legislature from distinguishing among home rule units for purposes of preemption. Other comments cited by the defendants and *amici* are subject to similar objections. The delegates also considered proposals on whether preemption should be accomplished in all instances only through the vote of three-fifths of the members of the General Assembly, and, relatedly, whether the preemption of larger home rule units should be subject to the requirement of an extraordinary legislative majority. Those debates, however, concerned only whether the constitution itself should make it more or less difficult for the General Assembly to preempt home rule powers; the debates did not touch on the question posed here, whether the legislature, in preempting home rule authority, is precluded from distinguishing among home rule units. Thus, that the framers declined to include within the constitution a provision requiring the legislature to treat home rule units differently on the basis of their population does not mean that they intended, in all cases, to prevent the legislature from doing so.

The convention expressed its collective will in the local government article, and we decline to expand those requirements beyond what is stated in those provisions. This court has explained:

"While statements and reports made by the delegates to the constitutional convention are certainly useful and important aids in *interpreting* ambiguous language of the constitution (see *Board of Education v. Bakalis* (1973), 54 Ill. 2d 448, 461-62), they are, of course, not a part of the constitution. It would be improper for this court to transform statements made during the constitutional convention into constitutional requirements where such statements are not reflected in the language of the constitution." (Emphasis in original.) *Village of Carpentersville v. Pollution Control Board* (1990), 135 Ill. 2d 463, 473.

Having found no constitutional impediment to the preemption scheme employed in the present Act, we must conclude that the measure is valid. "It is well accepted in this State that the constitution is not regarded as a grant of powers to the legislature but is a limitation upon its authority; the legislature may enact any legislation not expressly prohibited by the constitution. [Citations.]" (*People ex rel. Chicago Bar Association v. State Board of Elections* (1990), 136 Ill. 2d 513, 525; see also *Kluk v. Lang* (1988) 125 Ill. 2d 306, 324.) Because we have found no provision in the constitution that prevents the legislature from distinguishing among units in preempting home rule authority, we must conclude that the legislature possesses the power to preempt in the manner evidenced by the present Act.

As a final matter, we consider the defendants' argument that the preemption clause of the Public Employee Disability Act is invalid because it fails to recite the proper source of the type of home rule preemption being invoked in the present case. Section 7 of the

Statute on Statutes requires that any legislative statement of preemption indicate the source and scope of that exercise. Section 7 provides:

> "No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i), (j), or (k) of Section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit." 5 ILCS 70/7 (West 1992).

The provision at issue here was enacted in 1988, and thus section 7 is applicable in this case. The preemption provision of the Public Employee Disability Act states:

> "Pursuant to paragraphs (h) and (i) of Section 6 of Article VII of the Illinois Constitution, this Act specifically denies and limits the exercise by home rule units of any power which is inconsistent herewith, and all existing laws and ordinances which are inconsistent herewith are hereby superseded. This Act does not preempt the concurrent exercise by home rule units of powers consistent herewith.
>
> This Act does not apply to any home rule unit with population of over 1,000,000." 5 ILCS 345/1 (West 1992).

The defendants contend that the relevant preemption provision is actually section 6(g), rather than sections 6(h) and (i), because in this instance the legislature is denying to home rule units a local power that is not being exercised by the legislature. We do not agree with the defendants that the legislation refers to the incorrect preemption provision of the constitution. The Public Employee Disability Act represents an exercise of power by the State, and thus section 6(g) is not controlling here. The Act applies to certain divisions of

138

State government, and hence it involves a power or function that is being exercised or performed by the State. See *County of Kane v. Carlson* (1987), 116 Ill. 2d 186, 212-13.

For the reasons stated, the judgment of the circuit court of Sangamon County is reversed, and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*