Vicki **DUNLOP**, Plaintiff,

v.

**Philip M. COLGAN, individually and as Director of Indian Valley Vocational Center, et al., Defendants.**

No. 87 C 4011.

United States District Court, N.D. Illinois, E.D.

June 13, 1988.

---

Edward F. Diedrich, DeKalb, Ill., for plaintiff.

Allen D. Schwartz, Michael J. Foley, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Raymond Hauser, Scariano, Kula, Ellch, Chtd., Gerald E. Dempsey, Klein, Thorpe and Jenkins, Ltd., James O. Nolan, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Betty Thielemann, Associate General Counsel, Illinois Educ. Ass'n-NEA, John T. Burke & Assoc., P.C., Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

Claiming that she was improperly dismissed from her teaching job, plaintiff asserts an assortment of state and federal claims. Defendants move for summary judgment on plaintiff's federal claims. In addition, two groups of defendants urge the court to dismiss them from this lawsuit. After reviewing the various attacks on plaintiff's complaint, this court enters summary judgment for defendants on plaintiff's due process and conspiracy claims. With respect to plaintiff's equal protection claim, however, the court denies defendants' summary judgment motion. As for the various defendants, this court dismisses the eleven school boards whose students attend the school where plaintiff taught; but the individuals who voted to dismiss plaintiff must remain defendants in this action.

## FACTS

The Indian Valley Vocational Center ("IVVC"), located in Sandwich, Illinois, offers a variety of vocational education courses to students in twelve neighboring school districts. The IVVC operates under the supervision of its Director, Philip Colgan, and its Board of Control, which consists of representatives from each of the twelve participating school boards.

In late October 1983, faced with a sudden vacancy in the IVVC faculty, Colgan offered a teaching job to plaintiff Vicki Dunlop. Dunlop accepted Colgan's offer and began teaching at the IVVC on or about October 28, 1983. The Board of Control, however, did not vote to hire Dunlop until its meeting of November 2, 1983. The parties then executed Dunlop's employment contract on November 15, 1983.

From her first day at the IVVC until her termination, Dunlop taught a nursing course. Initially, her teaching performance received favorable reviews from her colleagues and the school administration. During the 1985–86 school term, however, the administration's perception of Dunlop changed dramatically. For reasons that the pleadings do not fully illuminate, school administrators who had once praised Dunlop suddenly started to criticize her. On March 5, 1986, the Board of Control gave Dunlop notice of her dismissal, effective at the conclusion of the 1985–86 school year. The Board advanced three reasons for Dunlop's dismissal: failure to follow established procedures when acting upon student problems; failure to maintain effective communication with the school administration; and unprofessional behavior exhibited toward students.[1]

After receiving notice of her termination, Dunlop requested a hearing before the Board of Control. She also asked the Board to elaborate on the reasons for her dismissal. When the Board refused both of Dunlop's requests, she filed suit in state court, seeking reinstatement. Dunlop then voluntarily dismissed her state court suit,

---

1. The Board acted on the assumption that Dunlop had not yet attained tenure. Accordingly, the Board's dismissal of Dunlop complied with state procedures for termination of nontenured teachers. See Ill.Rev.Stat. ch. 122, para. 24–11 (1985).

electing instead to file this action in federal court.

## DISCUSSION

In seeking redress for her allegedly wrongful termination, Dunlop asserts a wide variety of state and federal claims against a host of defendants, including Colgan, the IVVC, the Board of Control and its individual members, and eleven of the twelve school boards participating in the IVVC. Dunlop premises her federal claims on 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).

Defendants' motion for summary judgment attacks Dunlop's complaint on two grounds. First, defendants argue that the complaint fails to state a colorable federal claim under either § 1983 or § 1985(3). Second, two groups of defendants named in the complaint—the participating school boards and the individual members of the IVVC Board of Control—claim immunity from liability for Dunlop's alleged injury. In assessing defendants' motion, this court will consider each of these two arguments in turn.

### I. *Dismissal of Federal Claims*

#### A. Section 1983

In Count I of her complaint, Dunlop alleges that defendants deprived her of her civil rights in violation of 42 U.S.C. § 1983. This assertion, although encompassed in a single count, actually amounts to three claims masquerading as one. Beneath the umbrella of § 1983, Dunlop makes separate allegations in Count I under the constitutional rubrics of procedural due process, substantive due process, and equal protection. Therefore, before granting summary judgment with regard to Count I, this court must consider the viability of all three alternative theories advanced under the auspices of § 1983.

#### 1. *Procedural Due Process*

During the early stages of this litigation, the parties have fought their most hotly contested skirmishes on the battleground of procedural due process. Dunlop and defendants vehemently disagree about whether she was entitled to a pretermination hearing. Primarily, the battle rages over a single pivotal issue: Did Dunlop acquire tenure before the Board of Control voted to dismiss her? A teacher cannot claim a violation of procedural due process without first establishing that she possesses a constitutionally protected property interest, such as a tenured position. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Unless she can make a plausible argument that she has achieved tenured status on the IVVC faculty, Dunlop cannot proceed on a procedural due process theory.

Dunlop's claim to tenure rests on her contention that she taught at the IVVC for the 1983–84 and 1984–85 school terms. In Illinois, a teacher achieves contractual continued service (i.e., tenure) after completing a probationary period of two consecutive school terms of full-time employment. Ill. Rev.Stat. ch. 122, para. 24–11 (1985). The Illinois School Code further provides: "For the purpose of determining contractual continued service, the first probationary year shall be any full-time employment from a date before November 1 through the end of the school year." *Id.* Pursuant to this provision, the 1983–84 school year cannot count toward Dunlop's acquisition of tenure unless she began teaching full-time before November 1, 1983.

Dunlop alleges that she started teaching at the IVVC on October 31, 1983. She concedes, however, that the Board of Control did not vote to appoint her to the faculty until November 2, 1983. Normally, this fact alone would conclusively settle the tenure issue in defendants' favor. As a general rule under Illinois law, only a school board has the authority to appoint teachers. *Illinois Education Ass'n v. Board of Education*, 62 Ill.2d 127, 340 N.E.2d 7 (1975). Barring any deviation from this rule, Dunlop's probationary period could not officially begin until the Board took action on November 2, 1983.

An Illinois appellate court, however, recently recognized an exception to the long-established rule that only a school board itself may make faculty appointments. In

*Braught v. Board of Education,* 136 Ill. App.3d 486, 91 Ill.Dec. 277, 483 N.E.2d 623 (1985), the court ruled that a school superintendent's hiring of a replacement teacher took effect immediately, even before the school board voted to appoint the new teacher. The *Braught* court reasoned that the superintendent had appropriately exercised the school board's hiring authority because he was acting as the board's agent. *Braught* thus carved a narrow exception into the rule governing faculty hiring: The power to appoint teachers rests not only with a school board, but also with the board's authorized agents.

Dunlop feebly attempts to fit her case within the *Braught* exception. She baldly asserts that Colgan acted on behalf of the IVVC Board when he hired her in late October 1983. Based on this unsubstantiated premise, she argues that her tenure clock began to tick on October 31, 1983, the day when she allegedly started teaching at the IVVC. The record in this case, however, provides no support for Dunlop's agency theory; and the *Braught* exception only applies to cases involving clearly established agency relationships. In *Braught,* for example, the superintendent was acting in accordance with established policy and custom when he hired a replacement teacher. Moreover, after learning that the superintendent had hired a new teacher, the school board voted to ratify the superintendent's action at the next board meeting. *Id.* at 489, 91 Ill.Dec. at 280, 483 N.E.2d at 626. In stark contrast, Dunlop offers no evidence of any policy or custom that empowers Colgan to hire teachers for the IVVC.[2] Furthermore, nothing in the record suggests that the IVVC Board intended to ratify—or even knew about—Colgan's previous hiring of Dunlop. According to the minutes of the IVVC Board's November 2, 1983 meeting, the Board voted to appoint Dunlop for *the rest* of the 1983–84 school year. Apparent-

ly, the Board never even discussed Colgan's prior dealings with Dunlop. The Board's silence on this matter belies Dunlop's assertion that the Board meant to make her appointment retroactive to the day Colgan hired her.

Given the fact that Dunlop's probationary period did not begin until the IVVC Board appointed her on November 2, 1983, she had not yet attained tenure when the Board dismissed her in early 1986. For this reason, this court grants defendants' motion for summary judgment with respect to Dunlop's procedural due process claim.

### 2. *Substantive Due Process*

██ Dunlop also asserts that defendants violated her right to substantive due process. In presenting this constitutional claim, her complaint invokes the First, Fourth, Fifth, Sixth, Ninth, Tenth, and Fourteenth Amendments. This seemingly random litany of amendments apparently refers to the right to privacy, which emerged from the penumbras of several amendments in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Unfortunately, *Griswold*'s penumbras are not the only shadows in Dunlop's complaint. Although she makes an oblique reference to the right to privacy, Dunlop never specifies how defendants allegedly infringed on her privacy. By leaving her adversaries and this court in the dark about the facts underlying her privacy claim, Dunlop fails to satisfy even the most rudimentary requirements of notice pleading. Consequently, Dunlop's substantive due process claim cannot survive defendants' motion for summary judgment.

### 3. *Equal Protection*

██ Having disarmed Dunlop of her due process claims, this court must now inspect the last remaining weapon in her § 1983 arsenal—an allegation of sex discrimination based on the Equal Protection

---

**2.** Perhaps, as Dunlop suggests, Colgan has assumed more independent authority in dealing with faculty matters than the Board is willing to admit. After all, Colgan himself arranged for Dunlop to receive full-time pay immediately after he hired her—even though the Board had

not yet appointed Dunlop to a full-time position. Standing alone, however, Colgan's dealings with Dunlop do not demonstrate the sort of "established policy and custom" with respect to faculty hiring that *Braught* requires.

Clause of the Fourteenth Amendment.[3] Dunlop tersely alleges that defendants dismissed her because of her sex. This basic allegation of intentional differential treatment states a *prima facie* claim under the Equal Protection Clause. *Skadegaard v. Farrell*, 578 F.Supp. 1209, 1216 (D.N.J. 1984). Dunlop need not allege that other women suffered a similar fate; a single instance of discrimination provides a sufficient basis for an equal protection claim. *Id.* at 1216–17; *Woerner v. Brzeczek*, 519 F.Supp. 517, 519–20 (N.D.Ill.1981). Moreover, Dunlop's lack of tenure, the Achilles' heel of her procedural due process allegation, does not defeat her discrimination claim. A school board may terminate a nontenured teacher for virtually any reason, but not for a constitutionally impermissible reason. *See Clark v. Mann*, 562 F.2d 1104, 1116 (8th Cir.1977). If the IVVC Board dismissed Dunlop because she is a woman, as her complaint alleges, then she is entitled to relief under the Equal Protection Clause. Having stated a claim, Dunlop should receive an opportunity to prove her charge of discrimination. Therefore, this court denies defendants' motion for summary judgment with regard to Dunlop's equal protection claim under § 1983.

### B. Section 1985(3)

■ In addition to her § 1983 claims, Dunlop alleges a conspiracy in Counts III and IV of her complaint. Pursuant to 42 U.S.C. § 1985(3), she accuses defendants of conspiring to deprive her of her civil rights. Dunlop's conspiracy theory, however, flies in the face of a well-established principle: Corporate agents acting in their official capacities cannot engage in a conspiracy cognizable under § 1985(3). *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972); *Walker v. Woodward Governor Co.*, 631 F.Supp. 91, 93 (N.D.Ill.1986). In light of this doctrine of intracorporate immunity, Dunlop cannot possibly assert a conspiracy claim based on defendants' con-

duct, which essentially amounted to a single act (Dunlop's dismissal) by a single corporate entity (the IVVC Board). *See Dombrowski*, 459 F.2d at 196. For this reason, the court enters summary judgment for defendants on Counts III and IV.

### II. *Dismissal of Defendants*

#### A. Participating School Boards

■ Among the many defendants named in her complaint, Dunlop includes eleven of the twelve school boards whose students attend the IVVC. These school boards played a minuscule role in Dunlop's termination; they merely appointed the IVVC Board members who voted to dismiss Dunlop. Thus, Dunlop's claim against the participating school boards rests entirely on a *respondeat superior* theory—a theory that the courts have routinely rejected in the context of § 1983. Unless an alleged injury stems from an official policy or custom, a plaintiff cannot sue a local government body under § 1983 for the acts of the government's agents or employees. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Because the school boards themselves bear no direct responsibility for Dunlop's dismissal, this court dismisses these defendants from this litigation.

#### B. Individual Members of the IVVC Board

■ The individual members of the IVVC Board of Control also seek to make an early exit from this lawsuit. These individual defendants claim that Dunlop cannot hold them liable under § 1983. This court disagrees. Admittedly, if Dunlop had sued the Board members solely in their official capacities, she could not recover damages from these individuals, but would have to seek relief from the Board itself. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Healy v. Town of Pembroke Park*, 643 F.Supp. 1208, 1213 (S.D.Fla.1986). The

---

**3.** Although victims of sex discrimination must normally look to Title VII for relief, Dunlop, a state employee, "may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme." *Trigg v. Fort Wayne Community Schools*, 766 F.2d 299, 302 (7th Cir.1985).

language of Dunlop's complaint, however, suggests that she is suing the Board members in both their official and personal capacities.[4] The Board members' only hope of dismissal from a personal-capacity suit hinges on their invocation of qualified immunity. *See Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Such immunity only applies to cases where government officials could not reasonably have known that their actions would violate someone's constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Obviously, qualified immunity cannot insulate the Board members from Dunlop's claim of intentional discrimination. In addition, Dunlop may be entitled to punitive damages if she prevails; and she could only recover such damages from the individual defendants, not from the Board itself. *See Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Based on these considerations, this court declines to dismiss the Board members from Dunlop's § 1983 action.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted with respect to Dunlop's due process and conspiracy claims, but denied with respect to her equal protection claim. In addition, this court dismisses the eleven school boards named by Dunlop as defendants. The court, however, refuses to dismiss either the IVVC Board of Control or its individual members from this lawsuit.

IT IS SO ORDERED.

---

4. Citing *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), defendants assert that, as a matter of law, Dunlop cannot bring both an official-capacity suit and a personal-capacity action at the same time. This proposition is simply incorrect. In fact, *Graham* implies that government officials may be "sued personally, in their official capacity, or both." *Id.* at 167 n. 14, 105 S.Ct. at 3106 n. 14.