Joan KASTEL, Plaintiff,

v.

The WINNETKA BOARD OF EDUCATION, DISTRICT 36, d/b/a The Winnetka Public Schools, et al., Defendants.

No. 96 C 1008.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 31, 1996.

District 36, Rebecca Van Der Bogert, Edward Ogata, M.D.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Joan Kastel sues the Winnetka Board of Education, its Superintendent, Rebecca van der Bogert, and the President of District 36, Edward Ogata. Her claims include age and sex discrimination for failure to hire (Counts I and III respectively); retaliation for Kastel's opposition to the alleged age and sex discrimination by the Board (Counts II and IV respectively); breach of contract (Count VI); interference with pension rights (Count VII); and an Illinois equal protection claim based on retaliation for exercising pension rights (Count IX).[1] The defendants' motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) is presently before the Court.

## RELEVANT FACTS

The following facts are drawn from the allegations of the complaint, which we must take as true when considering a motion to dismiss. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). Kastel was born on August 23, 1934. In 1964, she was hired by the Winnetka Board of Education as a speech-language pathologist. She held this position for 31 years. In May, 1995, Kastel, then age 60, took early retirement under the "5 + 5" early retirement plan codified at 40 ILCS § 5/16–133.5 (1993). Under that plan, Kastel was eligible to be rehired by the Board without impairing her retirement status provided the reemployment (1) was not within the same school year in which her service was terminated, and (2) did not exceed 100 paid days or 500 paid hours in any school year. *Id.* § 5/16–118.

According to the complaint, Kastel gave notice to the Board of her intention to elect early retirement on January 3, 1994.[2] Kastel

Mark D. DeBofsky, Richard Quentin Holloway, DeBofsky & DeBofsky, Chicago, IL, for plaintiff Joan H. Kastel.

Paulette A. Petretti, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Chicago, IL, Philip H. Gerner, III, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Chicago, IL, for defendants Winnetka Board of Education,

1. Counts alleging civil rights violations under 42 U.S.C. § 1983, violation of tenure rights and tortious interference with contract were voluntarily dismissed.

2. We note, however, that Kastel also stated in a letter to the superintendent on August 1, 1995: "As you know, I have not previously advised you of my decision to retire under E[arly] R[etirement] I[ncentive]. I request that you acknowl-

claims that at that time she was assured by the Superintendent and her Principal that she could continue her employment in a part-time capacity following her retirement. Kastel asserts that it was the Board's established practice and course of dealing that offers of employment made by the Superintendent and principals were considered offers by the Board. Kastel relied upon the assurances that she could return part time in reaching her decision to elect early retirement.

On May 31, 1995, Kastel formally applied to fill her old position of speech-language pathologist on a part-time basis. The Board denied her application on the grounds (which she identifies as a "technicality") that there was no position available, as her own retirement was not yet effective. She was also informed that she would be reemployed on a part-time basis only on the condition that she forgo her early retirement benefits. In addition to applying for her old position on a part-time basis, Kastel applied for other part time vacancies for speech-language pathologists. She made at least one formal application for such a position on August 15, 1996. She claims that she also made informal inquiries regarding other speech-language pathologist positions, and generally let it be known that she wanted to be considered for any relevant position that was or became available. Kastel was not hired for any of these openings. Instead, every available part-time speech-language pathologist position was filled by a person younger than Kastel.

From about May 31, 1995, through at least October 18, 1995, Kastel claims that she regularly gave the defendants notice that she intended to "pursue her rights" if she was denied part-time employment. This notice included warnings that she would file charges with the Equal Employment Opportunity Commission under the Age Discrimination in Employment Act and Title VII of the Civil Rights Act, as well as pursue litigation of her claims. Following each denial of her applications for part-time employment, Kastel questioned the actions of the Board and threatened to file a charge of age and

edge that I have not previously advised you of my decision to terminate active service." Am.

sex discrimination. Kastel eventually filed a charge with the EEOC on October 18, 1995. Kastel alleges that the Board told her that she would not be considered for any position because she had filed a charge of discrimination. Kastel received her right-to-sue letter from the EEOC on or about November 24, 1995, and commenced this suit. The defendants have moved to dismiss all remaining counts of the complaint.

### LEGAL STANDARDS

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Associates, Inc. v. Chicago Housing Auth.,* 892 F.2d 583, 586 (7th Cir.1989). The court, in considering a motion to dismiss, must view all facts alleged in the complaint, as well as any reasonable inferences drawn from the alleged facts, in the light · most favorable to the plaintiff. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). All ambiguities are resolved in the plaintiff's favor. *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### ANALYSIS

*I. Age Discrimination/Failure to Rehire.*

In Count I of her Amended Complaint, Kastel alleges that the Board failed to hire her for a part-time position because of her age, in violation of the ADEA, 29 U.S.C. § 621 *et seq.* The defendants first argue that Count I is insufficient as a matter of law, asserting that allegations of failure to "rehire" after an employee voluntarily retires from a job do not state a claim for age discrimination. The defendants also argue that they are entitled to the benefit of the "same actor" or "hirer/firer" presumption since the same employer who hired and employed Kastel for 31 years is now charged

Compl.Ex.B.

with discrimination against her. Third, the defendants claim that Kastel has not alleged and cannot allege that a person outside the protected class was hired in her place. Finally, the defendants argue that employment decisions which tend to affect older employees more adversely than younger employees are not discriminatory, even if they are admittedly correlated to age, so long as age itself is not the determinative factor.

To prevail on a claim for age discrimination, Kastel must prove that she was subjected to adverse employment treatment, and that "age was a determining factor in the sense that [the employment decision would not have been made] but for the employer's motive to discriminate on the basis of age." *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988). The Seventh Circuit has held that plaintiffs may prove this by presenting either direct or circumstantial evidence of discrimination. *Id.* The most common method of proving · employment discrimination circumstantially, and the approach taken by Kastel, is the burden-shifting method of proof articulated by the Supreme Court for Title VII claims in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and adapted to ADEA claims in *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1212 (7th Cir.1985). This method requires Kastel to make a prima facie case, creating a presumption that the decision affecting her employment was motivated by her age. The defendants could then attempt to rebut this by offering a non-discriminatory justification for the decision. Kastel would then have the opportunity to demonstrate that this proffered non-discriminatory justification was merely a pretext for discriminatory action. However, because of the limited scope of the court's analysis in considering a motion to dismiss, all that is required of Kastel at this stage is that she make out a prima facie case. *See Oxman,* 846 F.2d at 453.

██ Traditionally, to establish a prima facie case for failure to hire due to age discrimination, a plaintiff must allege that (1) she was a member of the protected class; (2) the employer was seeking applications for the position, she applied, and she was quali-

fied for the position; (3) she was not hired; and (4) a younger person was hired. *Caldwell v. National Ass'n of Home Builders,* 771 F.2d 1051, 1056 n. 2 (7th Cir.1985). Here, Kastel was, at all relevant times, a member of the protected class of persons over 40. With respect to the second element, Kastel creates the inference that her old position was in reality open when she applied on May 31, 1995 on a part-time basis, through her allegation characterizing as a "technicality" the defendants' argument that the position was not available because her retirement was not yet effective. Kastel also alleges that she inquired of the defendants about other part-time speech-language pathologist positions. The general rule is that even informal inquiries about positions are sufficient to satisfy this element of the prima facie case. *Chambers v. Wynne School Dist.,* 909 F.2d 1214, 1217 (8th Cir.1990). Kastel has thus satisfied the first and second requirements for making a prima facie case.

Additionally, Kastel has alleged that she was not hired for any of the positions for which she applied, satisfying the third element of her prima facie case. Finally, Kastel has alleged that a younger person was hired to fill each and every position for which she applied. By satisfying her fourth and final element in making a prima facie case for age discrimination/failure to rehire, Kastel has alleged facts sufficient to state a claim that she was not hired because of her age.

This Court rejects the defendants' argument that Kastel's claim amounts to an allegation that she was not rehired because she voluntarily retired, and that this does not state a cause of action for age discrimination. This assertion is an attempt by the defendants to recast Kastel's claim in terms less favorable to her. In considering the motion to dismiss, the Court takes the plaintiff at her word with respect to the claims she pleads in her complaint. *See Freeman v. Fairman,* 916 F.Supp. 786, 791 n. 4 (N.D.Ill. 1996). Here, Kastel claims age discrimination, and has alleged the four requisite elements established by the Seventh Circuit for making a prima facie ADEA claim. Her allegations create a reasonable inference that she was denied employment due to her age,

and thus are sufficient to state a claim for age discrimination.

■ We also reject the defendants' argument that the Board is entitled to the "same actor" inference. " 'In cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.' " *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1147 (7th Cir.1994) (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir.1991)). A crucial element in creating the inference is a short passage of time between the hiring and firing. *See E.E.O.C. v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir.1996) (ten month time span); *Rand*, 42 F.3d at 1147 (two years); *Proud*, 945 F.2d at 797 (six months). Here, however, the passage of time amounted to 31 years. The defendants ask this Court to infer that, because the Board hired Kastel in 1964, there was no discrimination in its refusal to rehire her in 1995. The inference cannot stretch so far.

The defendants' "same actor" argument fails for additional reasons. The inference is based on the premise that an employer who hires a person with a particular characteristic and then fires that person shortly thereafter cannot be said to have "suddenly developed an aversion to" persons with that particular characteristic. *Rand*, 42 F.3d at 1147. However, if the person does not have a protected characteristic when hired, then the hiring proves nothing about the employer's aversion to persons with the characteristic, and no inference can be drawn. Kastel was only 30 years old, well outside the protected class, when she was hired. The Board cannot use its hiring of her as a 30 year old in 1964 to create an inference that it did not discriminate against her because of her (60 year old) age in 1995.

An additional flaw in the defendants' argument is that there are no allegations that the same individual was involved in both the 1964 and 1995 decisions. The "same actor" inference requires that the decisionmaker was the same for both the hiring and the adverse employment action. *See id.* (inference applies "where the hirer and firer are the same individual"). The "same actor" inference cannot properly be imputed to the organization as a whole. The Board also claims that the inference can be based on the fact that it continued to employ Kastel until the day she retired. However, merely not firing Kastel does not create an inference that the Board did not discriminate against her when she applied for reemployment. For all of these reasons, the Court rejects the defendants' arguments based on the same actor inference.

■ In their reply memorandum, the defendants' belatedly contended that they refused to rehire Kastel because her seniority made her a more expensive employee, not because of her age. This argument fails for several reasons. First, this Court will not consider new arguments raised for the first time in a reply brief. *See Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir.1990). Second, this argument raises a substantive defense (a non-discriminatory justification for the defendants' actions) that goes beyond the allegations of the complaint. Accordingly, it is not properly considered by this Court on a motion to dismiss. *See Bonilla v. City Council of City of Chicago*, 809 F.Supp. 590, 595 (N.D.Ill.1992).

The defendants' next assertion, that Kastel has failed to state a claim for age discrimination because she could have remained in the defendants' employ had she not retired, is simply irrelevant. Kastel claims that the defendants did not properly consider her applications because of her age. Her claim is no less valid because of her decision to take advantage of the statutory early retirement plan.

■ Finally, the defendants argue that Kastel has not alleged, and cannot allege, that non-protected persons were hired in her place. She need not do so, however. In a recent decision, the Supreme Court held that in making a prima facie case, an ADEA plaintiff is not required to show that he or she was replaced by a person outside the protected class. *O'Connor v. Consolidated Coin Caterers Corp.*, — U.S. —, —, 116

S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). The Court reasoned that the ADEA protects against discrimination based on age, not membership in a class. *Id.* "The fact that one person in a protected class lost out to another person in the protected class is thus irrelevant, so long as he lost out *because of age.*" *Id.* After *O'Connor,* Kastel need only allege that a younger person, whether or not a member of the protected class, was hired in her place. This she did.

We thus reject all of the defendants' arguments, and find that Kastel has adequately pled a prima facie case of age discrimination. The motion to dismiss is denied with respect to Count I.

## II. Sex Discrimination/Failure to Rehire.

In Count III of her Amended Complaint, Kastel alleges that she was not rehired by the Board because of her sex. She claims that, of the class of people who elected to take early retirement, she was denied reemployment, while a male employee from this class was rehired on a part-time basis. The defendants argue that she has failed to adequately allege one element of her prima facie case, that a male received more favorable treatment with regard to any of the positions for which Kastel applied. The defendants contend that the simple fact that a male who took early retirement was rehired for one position does not create a sufficient inference that Kastel was discriminated against on the basis of sex when she was not rehired for different positions.[3]

To establish a prima facie case for sex discrimination under Title VII using the *McDonnell Douglas* burden-shifting method of proof, a plaintiff was previously required to establish four elements: (1) membership in a protected class; (2) that the employer was seeking applications for the position, the plaintiff applied for the position and was qualified for the position; (3) that the plaintiff was not hired; and (4) that similarly situated persons outside the protected class received better treatment. *Hughes v. Brown,* 20 F.3d 745, 746 (7th Cir.1994).

However, recent decisions have unsettled portions of this test.

As noted before, the *O'Connor* decision held that an age discrimination plaintiff need not allege that her replacement was not in the protected class, but merely that it was a younger person. *O'Connor,* —— U.S. at ——, 116 S.Ct. at 1310. The rationale behind this decision is readily discerned in age discrimination cases, as it is possible for two people to be in the protected class (over 40) and yet still have varying degrees of the protected characteristic (age). In Title VII cases, however, the characteristic being protected (race, sex, etc.) is identical to the definition of the class, without room for similar variation. That is, unlike in ADEA cases, one cannot be a member of the protected class of females, and yet be more or less female than any other member of the class. Thus it would appear at first glance that the Supreme Court's holding in *O'Connor* might not be directly applicable to Title VII cases.

The Seventh Circuit tackled this question in *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157 (7th Cir.1996), a Title VII race discrimination case. The court interpreted the Supreme Court's holding in *O'Connor* as applying equally to race and sex discrimination cases:

> After *O'Connor,* statements in decisions such as *Sample v. Aldi, Inc.,* 61 F.3d 544, 548 (7th Cir.1995), and *Hill v. Burrell Communications Group,* 67 F.3d 665, 668 (7th Cir.1995) to the effect that the plaintiff must show that his replacement is of a different race (sex, etc.) cannot be considered authoritative. The question instead is whether the plaintiff has established a logical reason to believe that the decision rests on a legally forbidden ground. That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition. Any demonstration strong enough to support a judgment in the plaintiff's favor if the employer remains silent will do, even if the proof does not fit into a set of pigeonholes.

---

3. The defendants also argued that Kastel's EEOC charge was not verified, and therefore this Court lacked jurisdiction over Count III. This argument is addressed in a separate order issued contemporaneously with this opinion.

*Id.* at 159. Taken together, *O'Connor* and *Carson* teach that the familiar *McDonnell Douglas* test is not *sine qua non* to stating a claim for discrimination, but rather is a plaintiff's guide to presenting " 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.' " *O'Connor,* —— U.S. at ——, 116 S.Ct. at 1310 (quoting *Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)). Accordingly, Kastel is not required to allege that some similarly situated person was treated better, but simply that the decision not to hire her "rests on a legally forbidden ground"—in this case, the fact that she is a female. *See Chiaramonte v. Fashion Bed Group, Inc.,* 932 F.Supp. 1080, 1087 (N.D.Ill. 1996); *Webb v. O'Malley,* No. 94 C 7435, 1996 WL 526780 at *4 (N.D.Ill. Sept. 12, 1996).

In support of her sex discrimination claim, Kastel has alleged that she was qualified, that several positions were open, that she applied but was not hired for any of them, and that a male who had also retired early was hired for a different job. It is a close call whether, under *Carson,* these facts create a sufficient inference that the Board's decision not to hire Kastel for the jobs she applied for was based on her sex. While *O'Connor* and its progeny have relaxed the structure by which a plaintiff must present her case, they have not done away with requiring the creation of a reasonable inference of discrimination. Instead, these decisions simply encourage courts to consider the "totality of the evidence" of discrimination (or, on a motion to dismiss, the totality of the allegations if taken as true).

In considering whether Kastel's allegations adequately imply a discriminatory motive for the Board's failure to hire her under this test, the Court is far from overwhelmed by the strength of Kastel's prima facie case. Nevertheless, on balance the Court does not find that the standard for dismissal is met here: it does not "appear[ ] beyond doubt that no set of facts exists which would support plaintiff's claim and entitle plaintiff to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The

defendants' motion to dismiss is denied with respect to Count III.

### III. The Retaliation Claims

■■■ Counts II and IV both charge that Kastel was denied consideration for employment because she opposed the defendants' unlawful discriminatory practices. Count II alleges retaliation for Kastel's opposition to the defendants' alleged age discrimination, while Count IV alleges retaliation for opposition to the claimed sex discrimination. Because these claims require nearly identical analysis, they will be addressed together. *See Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 884 n. 1 (7th Cir.1996) (the anti-retaliation provision of the ADEA has been recognized as " 'parallel to the anti-retaliation provision of Title VII ... and cases interpreting the latter provision are frequently relied upon in interpreting the former' ") (quoting *Passer v. American Chem. Soc'y,* 935 F.2d 322, 330 (D.C.Cir.1991)). In order to establish a prima facie case of retaliation, Kastel must allege that (1) she engaged in statutorily protected expression, (2) she suffered an adverse action by the employer, and (3) a causal link exists between the protected expression and the adverse action. *Alexander v. Gerhardt Enters., Inc.,* 40 F.3d 187, 195 (7th Cir.1994).

■■■ As an initial matter, the defendants claim that the allegations of retaliation are not properly before the court, as they were not included in the original charge Kastel filed with the EEOC. Generally, a plaintiff may bring only those claims which are included in the EEOC charge, or which are like or reasonably related to those included in the charge. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir. 1976). In Kastel's original charge, the box labeled "Retaliation" is not checked, and no facts supporting an allegation of retaliation are provided.

The Seventh Circuit recently held that allegations of retaliation occurring before the filing of the charge must be included in the charge in order to be properly brought before a court. *McKenzie v. Illinois Dep't of Transp.,* 92 F.3d 473, 483 (7th Cir.1996). In *McKenzie,* the plaintiff attempted to bring a

claim for retaliation in addition to her other claims, but the plaintiff's charge contained only allegations of sexual harassment and discrimination, not retaliation, and the box marked "Retaliation" on the charge form was not checked. The Seventh Circuit affirmed summary judgment dismissing the retaliation claim. Noting the distinction between alleged retaliatory actions which occur before the filing of the charge and those which occur after, the court held that "because each of those incidents of retaliation [taking place before the charge was filed] could have been—and should have been—included in [the plaintiff's] administrative charge, they cannot now serve as the basis of the retaliation claim alleged in her complaint." *Id.* at 483. In the present case, all of the instances of retaliation alleged by Kastel occurred before October 18, 1995, the date she filed her charge. Since these actions occurred before the charge was filed, they could have been, and should have been included in her administrative charge. If the Court looked to *McKenzie* alone, Kastel's failure to include her retaliation claims in her charge would result in dismissal of those claims.

However, the Seventh Circuit has determined that "allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir.1994). In *Cheek,* the court held that "in assessing the scope of the EEOC charge, [a court] may consider [plaintiff's] statements in a sworn affidavit … filed in support of the charge." *Id.* The charge in that case alleged sex discrimination based on a supervisor's practice of making the female plaintiff pay her clients' insurance premiums, a practice not required of the plaintiff's male counterparts. *Id.* The complaint, however, alleged sex discrimination based on a policy of assigning female employees to less profitable sales routes, and specifically, transferring the plaintiff from her original route to a less profitable one.

In determining whether the sex discrimination claim made in the complaint was like or reasonably related to the charge made to the EEOC, the court went beyond the charge itself and also considered the plaintiff's sworn affidavit filed in support of her charge. *Id.* Although in that case the court ultimately found that the matters mentioned in the plaintiff's affidavit were simply background for the claims described in the EEOC charge, *id.* at 503, *Cheek* stands for the proposition that a court may consider matters raised in documents outside of the EEOC charge itself when determining whether a claim was before the EEOC.

In this case, Kastel has submitted an EEOC questionnaire she completed to supplement her charge. While the retaliation box is not marked on this form, the form does state that Kastel believed that the action complained of "was in retaliation" against female employees' complaints regarding discriminatory behavior by the Board. A statement attached to the supplementary questionnaire states: "Because Joan [Kastel] has … advised the Winnetka Board of Education that she believes the Board has violated anti-discrimination laws and that she intends to file a charge with the EEOC, the Board has retaliated by telling its supervisors not to consider her for further employment." Fairly read, this states Kastel's belief that, in addition to age and sex discrimination, she was retaliated against for her opposition to the defendants's alleged unlawful employment decisions. The Court finds that this statement is not merely background material for the EEOC's investigation of age and sex discrimination, but raises a separate claim of retaliation. It thus passes the *Cheek* test.

The remaining question is whether Kastel's assertion of retaliation in a separate document filed contemporaneously with the EEOC charge is sufficient to overcome the absence of any indication on the face of the charge itself that Kastel was alleging retaliation. The answer is supplied by *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164 (7th Cir.1976). In that case, the court held that where a plaintiff included factual allegations of sex discrimination in an EEOC charge, the fact that she failed to check the sex discrimination box on the face of the charge form was not a fatal error to her case. *Id.* at 168–69. The court noted similar deci-

sions by other courts, reasoning that charges are often completed by lay persons without the assistance of counsel, and that access to judicial inquiry into their grievances should not be denied because of a technical flaw. *Id.* Relying on *Cheek* and *Jenkins,* we find that the factually specific allegations of retaliation in Kastel's supplementary filings with the EEOC are sufficient to bring her retaliation claim within the scope of her charge, and to distinguish her situation from that in *McKenzie.* We turn now to the adequacy of Kastel's prima facie retaliation case.

 Kastel has satisfied the first element of her prima facie case by alleging that she opposed discriminatory practices by the Board. She claims that, following each adverse employment decision denying her applications for part-time employment, she actively questioned the defendants' motivation for those denials, and threatened to initiate an EEOC investigation. The defendants contend, however, that this alleged "opposition" does not constitute statutorily protected activity.

The applicable statutes cover opposition to discriminatory action that does not rise to the level of filing a charge with the EEOC. Both the ADEA and Title VII expressly state that retaliation is unlawful against employees or applicants who oppose unlawful activity *or* who file a charge with the EEOC. *See* 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 2000e–5 (Title VII). Even the most informal forms of protest have been held sufficient opposition to give rise to a claim for retaliation. *See Arzate v. City of Topeka,* 884 F.Supp. 1494, 1503 (D.Kan.1995) (informal complaint to management is a protected activity under Title VII); *Harker v. Utica College of Syracuse Univ.,* 885 F.Supp. 378, 385 (N.D.N.Y.1995) (protected activities for purposes of retaliation claims include making informal protest, making complaints to management, writing critical letters to customers and expressing support of co-workers who have filed formal charges). We find that Kastel has adequately pled facts suggesting that she engaged in statutorily protected activity. Kastel has also alleged that she was not rehired, satisfying the second element of

a prima facie case, an adverse employment action.

 The third element, a causal link between the protected expression and the adverse action, is present for some but not all of the instances of retaliation alleged by Kastel. Specifically, this element has not been satisfied with respect to Kastel's application for her old position on May 31, 1995. The complaint indicates that that was the first time Kastel applied for a part-time position and was rejected. Kastel could not have opposed the Board's refusal to hire her until the first such refusal took place or was communicated to her. The complaint alleges no acts by Kastel prior to that point for which the Board could have been retaliating in denying this first application. Accordingly, the facts as pled do not suggest any causal link between Kastel's subsequent protest of this first denial, and the denial itself.

However, assuming that Kastel began voicing her protests to the defendants as soon as the first denial occurred, all the later applications and denials have a close connection both temporally and logically to those protests. This connection is sufficient to allow the inference that a causal link exists, at least for the purpose of a motion to dismiss. Therefore, Kastel has made her prima facie case with respect to the denials of her applications after her initial application on May 31, 1995.

Focusing on Kastel's filing of an EEOC charge in October 1995, the defendants nevertheless argue that there can be no causal link between the filing of the EEOC charge and the alleged retaliatory actions, which took place prior to the date of the filing. The defendants are correct that no causal link would be suggested if the filing of the EEOC charge were the only "opposition" to discriminatory practices alleged. As previously discussed, however, the protected expression alleged by Kastel is not the filing of the EEOC charge, but her challenges to the defendants' denials of each of her applications for part-time employment, which took place between May 31 and October 18, 1995. The defendants' repeated rejections of her employment applications took place during this same time. Because it is these chal-

lenges and threats, not the filing of the EEOC charge, which Kastel claims is the protected activity, the timing sequence between the protected expression and the adverse actions does not rule out a causal link.

■ The Court also rejects the defendants' argument that Title VII and the ADEA do not apply to post-termination acts of retaliation. Title VII states that it is unlawful to discriminate against "applicants for employment." 42 U.S.C. § 2000e–5. The ADEA anti-retaliation provision is similarly phrased. *See* 29 U.S.C. § 623(d). Here, Kastel was applying for a position with the Board, the situation contemplated by the anti-retaliation statutes. Whether she was also a former employee is irrelevant to her standing as an applicant for future employment. Further, the Seventh Circuit has held that this type of post-termination retaliation is covered by the statutes. In *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881 (7th Cir. 1996), the court concluded "that former employees, in so far as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment, do have a right to sue their employers under [Title VII]." *Id.* at 891. Therefore, the denials of Kastel's applications to be rehired fall within the scope of a proper retaliation claim.

For the foregoing reasons, the Court denies the defendants' motion to dismiss with respect to Counts II and IV.

## IV. Breach of Contract and Promissory Estoppel

■ Count VI is a breach of contract claim against all defendants. Kastel claims that various officials of the Board promised her that she would be retained as a part-time employee following her retirement. She further alleges that, according to the common practice and established custom of the Board, these promises constituted a binding offer of re-employment. Kastel accepted the offer, and as consideration for the contract she performed duties in excess of what was required of her under her former full-time contract, without compensation. She also claims that she relied on the promises that

she would be rehired in deciding to take advantage of the early retirement plan.

The defendants present several counterarguments. They maintain that, under Illinois law, only the Board is authorized to hire teachers, and Kastel has not alleged that she received a written or oral offer from the Board. They also contend that Illinois law prohibits an oral or implied contract from co-existing with an express contract on the same subject, and thus Kastel cannot have partially performed a part-time contract while she was still a party to her full-time contract. Finally, defendants claim that Kastel's own resignation letter proves that, as of August 1, 1995, Kastel had not received an offer of part-time employment.

■ Under Illinois law, a plaintiff must establish the following elements to prevail on a breach of contract claim: (1) the existence of a valid and enforceable contract, (2) performance by plaintiff, (3) breach by defendant, and (4) injury to plaintiff resulting from that breach. *See Berry v. Oak Park Hosp.*, 256 Ill.App.3d 11, 19, 195 Ill.Dec. 695, 701, 628 N.E.2d 1159, 1165 (1st Dist.1993).

To show the existence of a valid contract, Kastel alleges that she was assured by the Superintendent, the Director of Special Education, and her Principal that she would be re-employed on a part-time basis after her retirement. The defendants respond that, under 105 ILCS § 5/10–20.7, all hiring power is vested in the Board. In this case, however, Kastel has alleged an agency relationship between the Board and the Superintendent, the principals, and the Director of Special Education regarding hiring matters. In finding that Kastel's allegations on this point are sufficient to survive a motion to dismiss, we look to Illinois cases stating that school boards, as corporate bodies, necessarily act through their agents. *Classroom Teachers Ass'n v. Board of Educ.*, 15 Ill.App.3d 224, 229, 304 N.E.2d 516, 520 (3d Dist.1973); *see also Braught v. Board of Educ.*, 136 Ill. App.3d 486, 489, 91 Ill.Dec. 277, 279–80, 483 N.E.2d 623, 625–26 (1st Dist.1985) (rejecting plaintiff's argument that superintendent's actions were invalid because the power to act was vested in the school board by statute; the superintendent is an agent of the board);

*Dunlop v. Colgan*, 687 F.Supp. 406, 409–10 (N.D.Ill.1988) (recognizing that *Braught* carved "a narrow exception into the rule governing faculty hiring: The power to appoint teachers rests not only with a school board, but also with the board's authorized agents."). In light of this case law, we find Kastel's allegations sufficient to withstand the defendants' motion to dismiss.

Kastel further alleges that she accepted the offer of re-employment made to her, and that she provided consideration for the contract through partial performance. According to her complaint, Kastel performed services in the spring of 1995 in anticipation of her continued part-time employment in the fall of 1995. She alleges that this organization and planning was beyond the scope of her full-time contract, and that these activities were performed as an initial undertaking of her duties which were to exist under her part-time employment, expected to commence in fall, 1995.

The defendants assert that at the time Kastel claimed she was partially performing her part-time contract, she was still obligated to perform under her full-time contract. They note that Illinois law prohibits the co-existence of an implied or oral contract with an express contract concerning the same subject matter. The defendants therefore contend that the actions taken by Kastel were merely performance of her express, full-time contract, and therefore cannot be regarded as consideration for the alleged part-time contract.

In support of this argument, defendants cite *Zadrozny v. City Colleges of Chicago*, 220 Ill.App.3d 290, 163 Ill.Dec. 93, 581 N.E.2d 44 (1st Dist.1991). There, the plaintiff, a teacher, was asked by a college official for information regarding a course he taught in response to a student's complaint. *Zadrozny*, 163 Ill.Dec. at 95, 581 N.E.2d at 46. Plaintiff claimed that this request created an implied contract to compensate him for the time and effort exerted in complying with the official's request. *Id.* 163 Ill.Dec. at 97, 581 N.E.2d at 48. The court rejected this argument, holding that an implied contract cannot co-exist with an express contract on the same subject. *Id.* Since the plaintiff's express contract required him to assist officials in all activities necessary to bring the semester to a close, providing the requested materials could not have been the subject of a separate implied contract. *Id.*

In this case, however, Kastel has alleged that her acts of partial performance were acts above and beyond the scope of her full-time contract. She has alleged that she performed hundreds of hours of work for which she was not compensated under her full-time contract. For the purposes of ruling on this motion, we are obligated to take all facts asserted in the complaint as true. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). Kastel has alleged that the actions she claims were partial performance of the alleged part-time contract were not obligations under her full-time contract, and thus the scope of the two contracts did not overlap. Because Kastel has alleged all other elements of a contract action, she has stated a valid claim for breach of contract under Illinois law.

Finally, the defendants argue that Kastel's letter of resignation, attached to the Amended Complaint as Exhibit B, indicates that as of August 1, 1995, Kastel had not received the offer of employment she describes. Their argument is based on the fact that the letter purports to be the initial notification to the Superintendent of Kastel's intent to retire, and reiterates her request to continue her employment on a part-time basis.

There is no question but that this letter creates confusion on the issue of when the alleged contract was formed. Nevertheless, the defendants attempt to prove too much from this letter. Assuming that Kastel had not yet formally notified the Superintendent of her intent to retire, that does not necessarily mean that she had not discussed it informally with the Superintendent, or with other school officials who she claims promised her a part-time position. Also, it is plausible to read Kastel's reiteration of her request to continue part-time as an affirmation of her acceptance of the offer to employ her on a part-time basis. While this is perhaps not the first impression one might form upon reading the letter, it is not an improper or unwarranted interpretation. Because

Kastel's August 1, 1995 letter is subject to more than one interpretation, at least one of which is consistent with Kastel's contract claim, it does not foreclose that claim.

■■■ This Court also notes that, in the event Kastel ultimately is unable to prove the elements of a breach of contract claim at trial, the facts alleged may support a claim for promissory estoppel. To state a promissory estoppel claim under Illinois law, the plaintiff must establish that he or she reasonably and justifiably relied, to his or her detriment, on an unambiguous promise, and that such reliance was foreseeable by the promisor. *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1408 (7th Cir.1991). A promissory estoppel claim may be raised to enforce promises which do not meet the requirement of consideration. *Prentice v. UDC Advisory Servs., Inc.*, 271 Ill.App.3d 505, 512, 207 Ill.Dec. 690, 695, 648 N.E.2d 146, 151 (1st Dist.1995).

Here, Kastel alleges reasonable reliance on her Principal's and Superintendent's promises to rehire her. This Court, for the limited purposes of this motion, finds that nothing in the complaint suggests that this reliance was unreasonable or unjustified, particularly as Kastel has alleged that offers of employment by principals or the Superintendent are the equivalent of offers from the Board. Nor is the alleged promise of re-employment ambiguous on its face.

Kastel has alleged a detrimental action, namely her decision to retire from full-time teaching, taken in reliance upon the promise to rehire her. It appears from a fair reading of the complaint that she would not have given up her full-time employment but for her belief that she would be rehired. The foreseeability of Kastel's reliance on this promise is supported by her allegation that it was the common practice within the district that offers by principals and the Superintendent were treated as offers from the Board. Because Kastel has alleged facts sufficient to support a claim for breach of contract, or in

the alternative for promissory estoppel, the motion to dismiss is denied with respect to Count VI.

## V. Article 13, Section 5 of the Illinois Constitution: Pension Rights

■■■ In Count VII, Kastel claims that by making her future employment conditional upon her foregoing her early retirement pension rights, Superintendent van der Bogert and Board President Ogata interfered with her pension rights in violation of article 13, § 5 of the Illinois Constitution.[4] Kastel's claim is based on the Illinois Constitution provision that reads:

> Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired.

Ill. Const., art. 13, § 5 (1996).

This provision is modeled on a similar provision of the New York Constitution. *Kraus v. Board of Trustees*, 72 Ill.App.3d 833, 845, 28 Ill.Dec. 691, 700, 390 N.E.2d 1281, 1290 (1st Dist.1979). The purpose of the provision is essentially to lock in an employee's pension rights as they are stated under the employment contract, or as they exist by statute. Loren Oury, Comment, *Public Employee Pension Rights and The 1970 Illinois Constitution: Does Article XIII, Section 5 Guarantee Increased Protection?*, 9 J. Marshall J. of Prac. & Proc. 440, 451 (1976) (citing IV Record of Proceedings, Sixth Ill. Constitutional Convention, *Verbatim Transcripts* 2931 (1969–1970)). The provision was necessary because, prior to its adoption, Illinois courts treated the majority of pension plans as gratuitous. *Id.* at 441. Therefore, members in state-supported pension funds were fearful that the legislature might modify, diminish or abandon the pension plans. The constitutional provision was adopted to secure the status of the pension plans as they

---

**4.** Claims such as Kastel's pension interference claims are often pre-empted by ERISA. *See MacLean v. Ford Motor Co.*, 831 F.2d 723, 726–27 (7th Cir.1987). Here, the parties have not raised the issue, and we do not presently have enough facts to determine whether the plan at issue in this case is a plan covered by ERISA. Accordingly, we do not address the question of pre-emption.

existed when the employees agreed to an employment contract, and to protect the plans against legislative abrogation. *Id.* at 457. The provision was not intended to create or protect "naked pension rights *qua* rights." *Poggi v. City of New York,* 109 A.D.2d 265, 269, 491 N.Y.S.2d 331, 335 (1985) (commenting on the similar provision in the New York constitution), *aff'd,* 67 N.Y.2d 794, 501 N.Y.S.2d 324, 492 N.E.2d 397 (1986).

In this case, the constitutional provision relied upon by Kastel does not address the wrongs she alleges. All the case law on this provision demonstrates that its function is to protect pension plans from being modified or abandoned after they have served as an inducement to enter a contract. *See, e.g., Peters v. City of Springfield,* 57 Ill.2d 142, 151–52, 311 N.E.2d 107, 112 (1974); *Ziebell v. Board of Trustees,* 73 Ill.App.3d 894, 900, 29 Ill.Dec. 544, 548–49, 392 N.E.2d 101, 105–06 (1st Dist.1979). Here, Kastel is claiming pension rights above and beyond what the plan specifically provides—i.e., the right not to have future employment made conditional on her surrender of her early retirement pension rights. While her claim evokes sympathy, we can find no cases suggesting that such a claim would be protected by article 13, section 5 of the Illinois Constitution. We are reluctant to carve out new rights under the Illinois Constitution where the state courts have not done so. Because Kastel has failed to state a cognizable claim based on article 13, section 5 of the Illinois Constitution, the motion to dismiss is granted with respect to Count VII.

*VI. Article 1, Section 2 of the Illinois Constitution: Equal Protection/Retaliation.*

In her last remaining count, directed towards Superintendent van der Bogert and Board President Ogata, Kastel alleges that the defendants retaliated against her for choosing to exercise her pension rights by refusing to rehire her, and that this refusal discriminated against her in violation of the equal protection clause of the Illinois Constitution. ILL. CONST., art. 1, § 2. Kastel alleges that she, as a member of the class of persons who elected early retirement, was denied the right to equal protection of the laws in that her applications for employment and those of other early retirees were not considered by the defendants. The defendants contend that the early retirement statute does not prohibit retaliation, and also claim that Kastel has cited no authority that such a cause of action even exists.

We note at the outset of our analysis that equal protection challenges based on the Illinois Constitution are evaluated under the same standards as the United States Constitution. *Nevitt v. Langfelder,* 157 Ill.2d 116, 124, 191 Ill.Dec. 36, 39, 623 N.E.2d 281, 284 (1993). In order to state a claim under the equal protection clause, the plaintiff therefore must allege (1) membership in a specific class, and (2) that membership in this class was the basis for disparate treatment. *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 513 (7th Cir.1993).

In this case, Kastel claims to be a member of the class of those teachers who elected early retirement. She also alleges that she and other members of this class were intentionally treated less favorably than others in that their applications for part-time employment were not considered simply on the basis of their election to take early retirement. While recognizing that Kastel faces an uphill battle to establish at trial that defendants lacked a rational basis for this treatment, we hold for the purposes of deciding this motion to dismiss that she has alleged facts sufficient to support a claim under the Illinois equal protection clause.

Defendants' argument that the early retirement statute does not explicitly prohibit retaliation fails to address Kastel's claim. Her claim is not based on the early retirement statute, but on the Illinois equal protection clause. As with its federal counterpart, "[t]his clause is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Kastel claims that she was not treated as favorably as other applicants because of her membership in the class of early retirees. Defendants' argument about the lack of a prohibition against retaliation in the statute creating this partic-

ular early retirement plan does nothing to weaken her claim.

Finally, we reject defendants' argument that the motion should be granted because Kastel has presented no evidence that such a cause of action exists. Although this Court has found cases which hold that no right to be free from retaliation exists under the equal protection clause, those cases all involved retaliation for filing claims of discrimination with the EEOC. *See Gray v. Lacke,* 885 F.2d 399, 414 (7th Cir.1989); *Yatvin v. Madison Metro. Sch. Dist.,* 840 F.2d 412, 418–19 (7th Cir.1988). In those cases, courts state that plaintiffs must use Title VII or the First Amendment as the basis for their causes of action. Here, however, the fact that Kastel chose the word "retaliation" to describe her cause of action does not necessarily make it analogous to those cases. It is clear from a reading of the complaint that Count IX is not a classic employment retaliation claim, and in fact may not involve "retaliation" in its usual sense at all. Rather, Count IX alleges that Kastel belongs to a class of people, early retirees, and that based on her membership in this class she was denied a benefit and opportunity which was extended to persons not members of this class. This is the classic formulation of a claim under the equal protection clause. The Court accordingly denies the motion to dismiss with respect to Count IX.

### CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted as to Count VII only, and denied as to all other counts. Count VII is hereby dismissed with prejudice.

Lastly, this Court must note that it is unfortunate that both parties have used their limited resources, as well as the Court's, in unleashing a volley of weak claims and unsuccessful counter-arguments, all in an attempt to determine the appropriate parameters of a complaint that contains many overlapping theories of recovery. While the Federal Rules of Civil Procedure allow such pleading practices, this Court agrees with Chief Judge Posner of the Seventh Circuit Court of Appeals, who recently

deplored "the mindless proliferation of legal theories by trial lawyers." *Vidimos, Inc. v. Laser Lab Ltd.,* 99 F.3d 217, 222 (7th Cir. 1996). Similarly, this Court notes that the defendants' attempt to raise summary judgment arguments in their motion to dismiss is inappropriate and premature, and that the many flawed arguments with which they barraged the Court were ultimately wasteful of everyone's limited resources. The Court urges both parties to adopt a more considered approach to both pleading and motion practice in the future.